IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| UNILOC 2017 LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG ELECTRONICS CO. LTD.,<br><br>　　　　Defendants. | Case No.: 2:18-cv-00508-JRG-RSP |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO STRIKE PORTIONS OF DR. WILLIAM "CHUCK" EASTTOM II
AND UNILOC'S AMENDED INFRINGEMENT CONTENTIONS**

3444417.v1

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ...................................................................................................1 | |
| II. | THE '654 PATENT ................................................................................................2 | |
| III. | LITIGATION HISTORY AND CLAIM CONSTRUCTION .............................3 | |
| IV. | LEGAL PRINCIPLES ...........................................................................................5 | |
| | A. | Infringement contentions are designed to provide the accused infringer with notice of the patentee's theory of the case, and may be amended without leave of court based upon the court's claim construction..........................5 |
| | B. | An expert report is intended to provide evidence in support of infringement contentions. ...............................................................................6 |
| V. | ARGUMENT...........................................................................................................7 | |
| | A. | Uniloc properly amended its Infringement Contentions pursuant to P.R. 3-6(a) in the wake of the Court's Claim Construction Order.....................................7 |
| | B. | Dr. Easttom's report takes into account the court's Claim Construction Order. ......................................................................................................10 |
| | | 1. Dr. Easttom's understanding of the term "normal operations" derives from the logical result of the Court's construction of the term "linked user identification module."...................................................10 |
| | | 2. eSIMs were identified in Uniloc's original Infringement Contentions because Samsung did not come out with them until the last month of discovery.................................................................................11 |
| | | 3. Doctrine of equivalents ...........................................................................12 |
| | | 4. Indirect infringement ...............................................................................13 |
| | C. | Uniloc had good cause to amend its Infringement Contentions and include the "new" opinions in Dr. Easttom's Report. .........................................................13 |
| | | 1. The explanation for the party missing the deadline. .................................13 |
| | | 2. The importance of what the court is being asked to exclude.....................14 |
| | | 3. Potential prejudice by allowing that which would be excluded. ...............14 |
| | | 4. The availability of a continuance to cure any such prejudice....................15 |
| | D. | There was no sanctionable conduct here. .................................................15 |
| VI. | CONCLUSION.....................................................................................................15 | |

## TABLE OF AUTHORITIES

**CASES**

*Azure Networks, LLC v. CSR PLC*,
 No. 6:11-CV-139-LED-JDL, 2012 WL 12919538 (E.D. Tex. Dec. 4, 2012) ...................... 6, 8

*Biscotti Inc. v. Microsoft Corp.*,
 No. 2:13-cv-01015-JRG-RSP, 2017 WL 2267283 (E.D. Tex. May 24, 2017) ....................... 7

*Cell and Network Selection LLC v. AT&T, Inc.*,
 No. 6:13-cv-403, 2014 WL 10727108 (E.D. Tex. Nov. 10, 2014) ...................................... 5, 6

*EON Corp. IP Holdings, LLC v. Sensus USA Inc.*,
 No. 6:09-cv-116, 2010 WL 346218 (E.D. Tex. Jan. 21, 2010) ............................................... 6

*IDB Ventures LLC v. Charlotte Russe Holdings Inc.*,
 360 F. Supp. 3d 541, 553 (E.D. Tex. 2018) ........................................................................ 5, 9

*Roy-G-Biv Corp. v. ABB, Ltd.*,
 63 F.Supp.3d 690 (E.D. Tex. 2014) ........................................................................................ 6

*SSL Servs., LLC v. Citrix Sys., Inc.*,
 No. 2:08-cv-158, 2012 WL 12904284 (E.D. Tex. Mar. 16, 2012) ...................................... 5, 6

*Virnetx Inc. v. Cisco Sys., Inc.*,
 No. 6:10-cv-417, 2012 WL 12546881 (E.D. Tex. Oct. 22, 2012) ........................................... 5

**STATUTES**

35 U.S.C. § 112, ¶ 6 ................................................................................................................... 12

**RULES**

Fed. R. Civ. P. 26(a)(2)(B) ........................................................................................................... 6
P.R. 3.6(a) ........................................................................................................................ 7, 8, 13
P.R. 3-6(a)(1) ................................................................................................................................ 5
P.R. 3-6(b) .................................................................................................................... 6, 8, 13

Plaintiff Uniloc 2017 LLC ("Uniloc") respectfully opposes Defendants' Motion to Strike Portions of the Expert Report of Dr. William "Chuck" Easttom II and Uniloc's Amended Infringement Contentions, Dkt. 77 ("Motion") filed by Defendants Samsung Electronics America, Inc. and Samsung Electronics Co Ltd.'s (collectively "Samsung").

## I.     INTRODUCTION

Samsung buries the lead.  Samsung claims that it should not have been "unexpected or unforeseeable" that the Court would agree with Samsung's proposed definition of the key term "linked user identification module."  Mot. at 2, 7, 9, 10, 14, 15.  Or, more specifically, that the Court would "agree[] with Samsung that there is 'only one' linked user identification module that permits 'normal operation' of the claimed device." *Id.* at 2; *see also id.* at 4 (repeating three times "the only one"), 7 (once), 8 (three times), 14 (once).  But, that was not Samsung's proposed construction *until two weeks before the claim construction hearing*.  Samsung manages to hide this admission in footnote 6 on page 8; but, up until December 5, 2019, Samsung's proposed construction for this four-word term was the following thirty-one-word definition:

> a user identification module whose data has been read by, and stored on, the mobile radio telephony device, and that is the only one that permits normal operation of the device.

Dkt. No. 77-7 at 2.  Samsung clung to this proposed construction for three months, until even Samsung had to admit that it was unsustainable.  So, Samsung switched to "a user identification module that is the only one that permits normal operation of the device," Dkt. No. 52 at 2, abandoning three of the four limitations Samsung tried to cram into the term.  This Court did adopt Samsung's (final) construction, but another court—even before this Court's Claim Construction Order—went the opposite way.  If Samsung could not agree with its own proposal, and if (thus far) two courts cannot agree on a remotely similar definition, Uniloc cannot be expected to have expected the Court's construction, and so the amendment was warranted.

1

## II. THE '654 PATENT

On November 11, 2018, Uniloc sued Samsung for infringement of U.S. Patent No. 6,836,654 ("the '654 patent"), which is directed to anti-theft protection for a "mobile radiotelephony device" (*e.g.*, a mobile phone). *See* Dkt. No. 61 (Claim Construction Order). The patent was filed on December 18, 2000, and claims priority to a French application filed on December 21, 1999. Mobile phones had been around for a while by then, but were just becoming truly mobile, in that they could fit into a pocket. They were also therefore more easily lost or stolen at a time when a call could cost $2 per minute or more. Thus, if a phone was lost, not only did the owner lose the valuable equipment, the bill could quickly become exorbitant.

The '654 patent teaches protection against unauthorized use by preventing "normal operation" of the device when, after mounting a "linked user identification module" (*e.g.*, a SIM), the device had been inactive for a period of time. A "deblocking code" (*e.g.*, PIN) can be supplied to the device subsequent to the defined period of time to again permit the normal operation of the device with a linked used identification module. *See* Ex. A at Abstract.[1] According to one embodiment, three different blocking state may be employed. These blocking states, and the paths to reach them, are illustrated in Figure 3 to the right (red emphasis added). The device will enter the first blocking state (K5) when a user identification module is placed inside of it which is not one that is already linked to the device; in this state,



FIG. 3

---

[1] Lettered exhibits herein are attached to the Declaration of Aaron S. Jacobs.

"the device is disconnected from the network." *Id.* at 3:14-20. The device will enter the second blocking state (K11) when the device has remained idle for more than time "T"; in this state, "the device only processes incoming calls and, possibly, the outgoing calls that correspond to emergency numbers." *Id.* at 3:33-46. The device will enter the third blocking state (K30) when the deblocking code—used to get out of the second blocking state—has been entered more than a predetermined number of times; in this state, "it is necessary to contact the organization that provides the identification module" to unblock the device. *Id.* at 3:52-60.

### III. LITIGATION HISTORY AND CLAIM CONSTRUCTION

Uniloc served its P.R. 3.1 Infringement Contentions on March 14, 2019. Dkt. No. 20. The parties exchanged proposed terms for construction five months later, on August 13, 2019, and preliminary constructions on September 3, 2019. *Id.* Samsung's Motion hinges on construction of the term "linked user identification module," which will be discussed below.

Uniloc proposed that the term be given its ordinary meaning or, in the alternative, that it be defined as the "user identification module linked to the device." Dkt. No. 51-2 at 2.

Samsung's original—*i.e.*, September 2019—proposed construction was:

a user identification module whose data has been read by, and stored on, the mobile radio telephony device, and that is the only one that permits normal operation of the device.

Dkt. No. 77-7 at 2. Samsung's original definition included the phrase "user identification module," so the other twenty-eight words that were not part of a circular definition were directed at adding four limitations by way of the single word "linked" in the term:

- the user identification module has data;
- that data has been read by the mobile radiotelephony device;
- that data has been stored on the mobile radiotelephony device; and
- the user identification module is the only one that permits normal operation.

3

On December 5, 2019—three months after it proposed its original construction and nine months after Uniloc served its Infringement Contentions—Samsung informed Uniloc that Samsung intended to abandon its original construction in favor of a new one: "a user identification module that is the only one that permits normal operation of the device." Dkt. No. 52 at 2. So, the parties went from disputing four imported limitations to just one: Whether the linked user identification module is the *only one* that permits normal operation.

Magistrate Judge Payne heard oral arguments on claim construction two weeks later, on December 19, 2019, Dkt. No. 55, and issued the Claim Construction Memorandum Opinion and Order on January 21, 2020. Of the eleven terms up for construction, Magistrate Judge Payne agreed with Samsung on only three. In particular, he invalidated claims 5 and 9, and adopted Samsung's belated construction for "linked user identification module." *See id.* Both parties filed objections to Magistrate Judge Payne's Claim Constructions, Dkt. Nos. 64 & 65, which this Court overruled, Dkt. No. 71.

Uniloc also asserts the '654 patent in *Uniloc 2017 LLC v. Motorola Mobility, LLC*, No. 18-01841-RGA-SRF (D. Del.). In that case, defendant Motorola's proposed construction for "linked user identification module" was nearly the identical to Samsung's original construction. *See* Ex. B (claim construction order) at 3. On January 17, 2020—four days before Magistrate Judge Payne issued his Order in the instant case—the *Motorola* court explicitly rejected Motorola's (and effectively Samsung's) proposed construction. As that court stated:

> There is nothing in the patent that requires that only one linked user identification module will permit the normal operation of the device for all embodiments. Thus, the patent is not limited to only one linked user identification module for all embodiments."

*Id.* The *Motorola* court therefore construed the term as "an authorized user identification module that permits the normal operation of the device," *id.*, 180° from this Court's construction.

4

## IV.  LEGAL PRINCIPLES

### A.  Infringement contentions are designed to provide the accused infringer with notice of the patentee's theory of the case, and may be amended without leave of court based upon the court's claim construction.

Pursuant to P.R. 3-6(a)(1), a patent owner may amend its infringement contentions—without leave of court—within 30 days of the issuance of a claim construction order if the patent owner believes in good faith that the order so requires. This "good faith" standard is subjective. *See SSL Servs., LLC v. Citrix Sys., Inc.*, No. 2:08-cv-158, 2012 WL 12904284, at \*2 (E.D. Tex. Mar. 16, 2012). A good faith basis to amend includes when a court's claim construction is unforeseeable or unexpected. *Virnetx Inc. v. Cisco Sys., Inc.*, No. 6:10-cv-417, 2012 WL 12546881, at \*3 (E.D. Tex. Oct. 22, 2012). A patent owner is not required, however, to incorporate defendant's proposed claim constructions in its infringement contentions. "As one court in this district stated, '[a]lthough the Court is concerned about encouraging late-hour amendments of infringement contentions,' the patent owner 'was not required to incorporate Defendants' contrasting proposed constructions in its infringement contentions prior to those constructions being adopted by the Court.'" *IDB Ventures LLC v. Charlotte Russe Holdings Inc.*, 360 F. Supp. 3d 541, 553 (E.D. Tex. 2018) (Bryson, J., sitting by designation) (quoting *Cell and Network Selection LLC v. AT&T, Inc.*, No. 6:13-cv-403, 2014 WL 10727108, at \*3 (E.D. Tex. Nov. 10, 2014)). More fully, in *Cell and Network Selection*, the Court explained:

> Defendants respond that CNS should have expected the Court's adopted constructions because they were essentially the same constructions that Defendants proposed during the claim construction proceedings. . . .
>
> CNS and Defendants proposed very different constructions of "paging channel" and "strength." The Court in its Report and Recommendation also construed those terms quite differently from what CNS proposed. . . . CNS was not required to incorporate Defendants' contrasting proposed constructions in its infringement contentions prior to those constructions being adopted by the Court. After the Court issued its Report and Recommendation, CNS was not dilatory in sending and serving Defendants with Second Amended Infringement Contentions

5

      that included, among other things, a doctrine of equivalents theory of infringement.

*Cell and Network Selection*, 2014 WL 10727108, at *3. Indeed, this Court has held that an accused infringer's proposed constructions are not sufficient "good cause" to amend prior to the claim construction hearing. *See, e.g.*, *Azure Networks, LLC v. CSR PLC*, No. 6:11-CV-139-LED-JDL, 2012 WL 12919538, at *2 (E.D. Tex. Dec. 4, 2012) ("If Plaintiffs feel a particular claim construction is the basis for amendment, then that amendment should come after the Court has adopted its final Claim Construction Order.").

      Separately, infringement contentions may be amended with leave of court under P.R. 3-6(b) for good cause. When deciding a motion to amend under P.R. 3-6(b), the court has broad discretion and weighs four factors: (1) the explanation for the party missing the deadline; (2) the importance of what the court is being asked to exclude; (3) potential prejudice by allowing that which would be excluded; and (4) the availability of a continuance to cure any such prejudice. *See, e.g., SSL Servs. v. Citrix*, 2012 WL 12904284, at *2.

### B. An expert report is intended to provide evidence in support of infringement contentions.

      An expert report cannot introduce theories not previously set forth in infringement contentions. *Roy-G-Biv Corp. v. ABB, Ltd.*, 63 F.Supp.3d 690, 699 (E.D. Tex. 2014). However, the scope of infringement contentions and the expert report are not coextensive. *Id.* The infringement contentions "need not disclose 'specific evidence nor do they require a plaintiff to prove its infringement case.'" *Id.* (citing *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, No. 6:09-cv-116, 2010 WL 346218, *2 (E.D. Tex. Jan. 21, 2010)). The expert report must include a complete statement of the expert's opinions, the basis and reasons for the opinions, and any data or other information considered when forming them. Fed. R. Civ. P. 26(a)(2)(B).

6

If an expert's disclosure of an opinion is considered to be outside the scope of the contentions, the court has broad discretion to allow the opinion and weighs the same four factors identified above for amending infringement contentions. *See*, *e.g.*, *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-01015-JRG-RSP, 2017 WL 2267283, at *2 (E.D. Tex. May 24, 2017).

## V. ARGUMENT

Samsung's Motion is written in the wrong order, as it hinges almost entirely upon the question of whether Uniloc was justified in amending its Infringement Contentions based upon the Court's construction of the term "linked user identification module." If Uniloc was right to amend pursuant to P.R. 3.6(a)—which, again, does not require a motion—then the rest of Samsung's arguments fall to the floor. As such, Uniloc will address that issue first.

### A. Uniloc properly amended its Infringement Contentions pursuant to P.R. 3-6(a) in the wake of the Court's Claim Construction Order.

Samsung cites this Court's *Azure Networks* ruling repeatedly. However, that opinion cuts against Samsung. Samsung cites it to argue that "Courts in this District have repeatedly 'emphasized that a good faith showing to amend pursuant to P.R. 3-6 (a) [sic] can *only* be made when the Court's claim construction is *unexpected or unforeseeable*.' *Azure Networks, LLC v. CSR PLC*, 2012 U.S. Dist. LEXIS 195016, at *11 (E.D. Tex. Dec. 4, 2012)." Mot. at 2, 9 (emphasis added by Samsung). Later, Samsung cited *Azure Networks* for the proposition that "[a] party is not free to amend its infringement contentions just because the Court does not adopt its exact proposed construction." *Id.* at 10 (quoting *Azure Networks*, 2012 U.S. Dist. LEXIS 195016, at *11-12); *see also id.* at 14-15 (citing *Azure Networks*). Samsung's quotations are, indeed, from the *Azure* case. But, they are at most only half of what that opinion had to say. The rest of that opinion is an excellent example of why Samsung's motion should fail.

7

In *Azure Networks*, the defendant served its infringement contentions in December 2011. The parties exchanged proposed claim constructions in August 2012, and the plaintiff moved to amend its infringement contentions in October 2012, based upon one of the defendant's proposed definitions. *Azure*, 2012 WL 12919538, at *1. This Court denied the plaintiff's motion:

> Under these circumstances, Defendants' proposed construction of a disputed claim term does not constitute a showing of good cause for the Court to grant leave to amend under P.R. 3-6(b). As it stands, Plaintiffs' Motion is premature. If Plaintiffs feel a particular claim construction is the basis for amendment, then that amendment should come after the Court has adopted its final Claim Construction Order.

*Id.* at *2. So, this Court concluded that even though the plaintiff disagreed with the defendant's construction, it was improper to amend before the Court issued an order on claim construction. Continuing, the Court stated:

> This Court has emphasized that a good faith showing to amend pursuant to P.R. 3-6(a) can only be made when the Court's claim construction is unexpected or unforeseeable. A party is not free to amend its infringement contentions just because the Court does not adopt its exact proposed construction. This, however, does not mean a party is encouraged to seek leave of the Court when it receives a proposed claim construction it does not agree with. The better course is to wait until the Court has adopted a final construction that would give the party a basis to move on that account. Foreseeability of the construction of a term relates to whether the construction was foreseeable at the time the original infringement contentions were served. If, at the time the original infringements contentions were served, a particular construction proposed by Defendants and thereafter adopted by the Court, was unforeseeable or unexpected, then within 30 days the Plaintiff may serve amended contentions if it believes it has a good faith basis to do so.

*Id.* (citation omitted). Samsung's quotations from and citations to *Azure Networks* focus on the first two sentences of the above paragraph, and *only* those sentences. The rest of the paragraph vitiates Samsung's Motion. In that part, this Court explained that the question of foreseeability of the construction focuses on "the time the original infringement contentions were served." If, at the time they were served—as in, *before* the Scheduling Conference and *several months before* the exchange of claim constructions—the accused infringer's constructions were not

8

foreseeable, then the patentee should not "seek leave of the Court when it receives a proposed claim construction it does not agree with." Rather, "[i]f, at the time the original infringements contentions were served, a particular construction proposed by Defendants and thereafter adopted by the Court, was unforeseeable or unexpected, then within 30 days the Plaintiff may serve amended contentions if it believes it has a good faith basis to do so."

Samsung's proposed thirty-one-word construction from September 2019 was not foreseeable at the time Uniloc served its Infringement Contentions. Those Contentions were served before the Court even held its scheduling conference, and fully five months before Samsung served its proposed constructions. And—this bears repeating—Samsung abandoned its own September 2019 construction in December 2019, just *two weeks* before the claim construction hearing. If even Samsung cannot stand by its original construction—a construction that added four limitations to the term—then how can Uniloc have been expected to amend based upon it? Again, Samsung's September 2019 construction was *at least three-fourths wrong*. Samsung will presumably harp upon the point that the Court did agree with *one* of those four additional limitations, but was Uniloc supposed to guess which it would have been?

Without its belated revision in December 2019, Samsung could not reasonably argue that the Court's final construction mirrored its own. Rather, if Samsung had not made that change, then the Court's construction would have differed quite significantly from Samsung's, insofar as it would have rejected three of the four proposed limitations. And, as this Court explained in *IDB Ventures*, "where the court's claim construction differs significantly from either party's proposed construction, the courts have allowed amendments of infringement or invalidity contentions." *IDB Ventures*, 360 F. Supp. 3d at 553. This Court's construction certainly "differed significantly" from both parties' constructions, at least up until Samsung's belated

9

revision. And, Samsung cannot seriously argue that Uniloc should have amended its Infringement Contentions at that point, just two weeks before the claim construction hearing.

Finally, even if the Court were to adopt Samsung's argument that foreseeability is based upon the time of claim construction briefing, Samsung's construction changed literally during the last two weeks, *well after* claim construction briefing was complete. At that point, in November 2019, Uniloc could not have known which construction to go with, be it (1) Samsung's September 2019 construction; (2) Samsung's—still undisclosed—December 2019 construction; (3) Motorola's proposed construction; (4) Uniloc's proposed construction; or (5) the *Motorola* court's construction. In any event, though, had Uniloc switched to Samsung's proposed construction from the briefing, Uniloc would have had to account for four additional limitations, three of which Samsung rejected and the fourth that the *Motorola* court rejected.

> **B.   Dr. Easttom's report takes into account the court's Claim Construction Order.**

If the Court agrees that Uniloc properly amended its Infringement Contentions due to the Court's construction, then Samsung's complaints about Dr. Easttom's Report all but disappear.

> **1.   Dr. Easttom's understanding of the term "normal operations" derives from the logical result of the Court's construction of the term "linked user identification module."**

Samsung complains that Dr. Easttom applied this Court's construction of the term "linked user identification module" as "a user identification module that is the only one that permits normal operation of the device" to understand the meaning of the embedded term "normal operation." *See* Mot. at 5. But, that understanding is the only logical conclusion. The patent explains that it "relates to a mobile radiotelephony device intended for accommodating a user identification module, where the device has an established link to an identification module to thereby prevent a normal operation of the device when an identification module other than the

linked identification module is mounted inside the device." Ex. A at 1:6-11. If the "linked" term had been construed as Uniloc proposed—or as the *Motorola* court adopted—then "normal operation" would need no further understanding. But, with the Court's construction, the only interpretation of "normal operation" that makes sense in the context of the claims is that it includes sending and receiving calls from the mobile phone number associated with the linked user identification module. Otherwise, the patent would simply have said that the device would prevent "use" of the device, rather than "normal operation."

> **2. eSIMs were identified in Uniloc's original Infringement Contentions because Samsung did not come out with them until the last month of discovery.**

Samsung complains about Dr. Easttom's assertion that eSIMs function as linked user identification modules, *see* Mot. at 10 (identifying Easttom Report ¶¶ 17, 18, 19, 136, 146, 159, 261, 275, 320, 342, 346 and 353), and that, if not literally infringing, they infringe under the doctrine of equivalents, *id*. at 13 (identifying ¶ 146). Samsung further argues that "there is no reasonable explanation for Uniloc's failure to identify eSIMs in its Infringement Contentions . . . ." *Id.* at 11. Finally, Samsung argues that "Dr. Easttom discusses eSIMs in the context of the Galaxy S20 and Galaxy Z Flip, neither of which is an Accused Product." *Id.* at 6 n.5. None of this is well taken.

As an initial matter, Uniloc's Infringement Contentions state that "Samsung infringes the '654 Patent by making, using, selling, offering to sell, and importing electronic devices that utilize antitheft measures, *including* [listed examples]." Dkt. No. 77-4 (emphasis added). So, while it is true that the S20 and Galaxy Z Flip were not on the list of examples, those examples were *exemplary*. More to the point, the S20 and Galaxy Z flip were not released until *February 2020*, and so by definition they could not have appeared on Uniloc's March 2019 Infringement Contentions. *See* Business Insider, "Samsung's newest foldable phone, Galaxy Z Flip, is now

available for $1,379.99 but stock is limited—here's everything you need to know," *available at* https://www.businessinsider.com/samsung-galaxy-z-flip-price-release-date (Feb. 14, 2020). Indeed, until these two products, *Samsung did not use eSIMs in its mobile phones*. *See* CNET, "Galaxy S20 is the latest smartphone to use an eSIM. Wait, what's an eSIM?" (Feb. 14, 2020), *available at* https://www.cnet.com/how-to/samsung-galaxy-s20-esim-carrier-guide/. As such, it would have been impossible for Uniloc to accuse eSIMs, let alone these particular phones, at any point up until the last week of discovery.

### 3. Doctrine of equivalents

Samsung complains that Dr. Easttom's report includes allegations regarding the doctrine of equivalents, specifically including in Paragraphs 101, 146 (which was addressed in § V.B.2, *supra*), 152, 170, 232, 267 and 372-375. Mot. at 13. This complaint is unfounded.

Paragraphs 101, 152, 232, 267 and 373 are each based upon construction of the means-plus-function terms, which are "construed to cover the corresponding structure . . . described in the specification *and equivalents thereof*." 35 U.S.C. § 112, ¶ 6 (emphasis added). Each of these paragraphs merely recognize this law. For example, Paragraph 101 reads:

> In my opinion, the structure I identify above is identical to the structure described in the '654 patent for performing function preventing a normal operation of the mobile radiotelephony device. However, if there are any differences, they are insubstantial, and therefore, the structure is at least equivalent to the claimed blocking means.

Dkt. No. 77-3 ¶ 101. So, Dr. Easttom states that the Accused Products literally infringe, and notes that equivalents of the structure—which was not defined until January 2020—also infringe.

Paragraphs 170 and 374 address the equivalence of deblocking codes, an issue Samsung already argued and lost. During claim construction, Samsung argued that "deblocking code" should be construed as "a PIN (Personal Identity Number) used to unlock/unblock the device," and further that the term must *not* include "a pattern or biometric (e.g., fingerprint, retinal scan,

12

etc.)." Dkt. No. 61 at 21, 23.  This Court disagreed:  "[T]he Court rejects Defendants' position that the 'deblocking code' is necessarily a PIN and determines that 'deblocking code' has its plain and ordinary meaning without the need for further construction." *Id.* at 24.

Finally, Paragraph 375 does not assert a means-plus-function infringement argument.

### 4. Indirect infringement

Samsung complains about Dr. Easttom's indirect infringement statements at Paragraphs 365-371.  *See* Mot. at 14.  Samsung has been on notice of Uniloc's position regarding indirect infringement since Uniloc filed the Complaint in November 2018.  *See* Dkt. No. 1 ¶¶ 13-18.

### C. Uniloc had good cause to amend its Infringement Contentions and include the "new" opinions in Dr. Easttom's Report.

If this Court concludes that Uniloc should not be permitted to amend its contentions pursuant to P.R. 3-6(a), Uniloc respectfully requests that the Court grant leave to allow the amendments on the following showing of good cause pursuant to P.R. 3-6(b).  The same factors and analysis also apply to Dr. Easttom's "new" opinions, and so are also addressed below.

### 1. The explanation for the party missing the deadline.

As discussed above, another court disagreed with the four additional limitations Samsung attempted to jam into the term "linked user identification module" in its September 2019 proposed construction.  Indeed, even Samsung recognized its proposal was untenable, albeit just two weeks before the claim construction hearing.  Samsung's proposal was so unreasonable that Uniloc cannot have been expected to amend based upon it, and certainly not based upon guessing just which—if any—of the four additional limitations might have made it into this Court's final construction.  So, this factor weights in favor of allowing the amendment and "new" opinions.

13

### 2. The importance of what the court is being asked to exclude.

The Court's adoption on January 21, 2020, of Samsung's December 5, 2019, proposed construction changed Uniloc's theory of the case. In short, Uniloc's prior theory is untenable in light of the Court's construction. As such, the amendment and "new" opinions are vital, and this factor weights in favor of allowing the amendment.

### 3. Potential prejudice by allowing that which would be excluded.

Samsung alleges that Uniloc's attempt to address the Court's January 21, 2020, claim construction "prejudiced Samsung's [1] ability to take discovery on Uniloc's new infringement theories, [2] address claim construction issues, [3] prepare rebuttal reports, and, more generally, its [4] defense of this case." Mot. at 3. These will be addressed in turn.

First, even if Uniloc had included infringement allegations based upon the "only one" construction, there is no discovery that Samsung would have needed to "take" for it. All evidence of infringement comes from Samsung, and there is no suggestion anywhere of any other discovery that would have been needed based upon it. Second, to the extent the Court adopted one of the four limitations Samsung proposed in September 2019, then Samsung could have—but did not—attempt to address any follow-up claim construction issues during the course of claim construction. Third, a rebuttal report is, by definition, in rebuttal of something. In this instance, Samsung has been in possession of Dr. Easttom's rebuttal report regarding infringement for exactly as long it would have been had this Court adopted the same construction as the *Motorola* court. And, fourth, there is no suggestion anywhere as to what Samsung would have done differently in "generally" preparing its defense of this case.

As such, the prejudice to Samsung is minimal.

      **4.**      **The availability of a continuance to cure any such prejudice.**

Uniloc served the Easttom Report on Samsung on February 18, 2020, and the Amended Infringement Contentions on February 20, 2020. Following this Court's March 24, 2020 Order granting Uniloc's motion to compel, Dkt. No. 94, the parties agreed to ask the Court to extend the deadline for expert discovery out to April 17, 2020, and the dispositive motion deadline out to April 24, 2020. Dr. Easttom's deposition is set for April 1-2, 2020. Samsung will have known of Uniloc's amended infringement theory for six weeks by that point, and for more than two months by the time summary judgment motions are due. Thus, no continuance is necessary.

      **D.**      **There was no sanctionable conduct here.**

Finally, there is nothing approaching sanctionable conduct in this case. Again, nearly the entirety of Samsung's Motion is based upon the theory that Uniloc should have amended its Infringement Contentions back in September 2019, when Samsung advocated a construction for "linked user identification module" that Samsung abandoned two weeks before the claim construction hearing. Even if this Court concludes that Uniloc should not be permitted to amend its Infringement Contentions due to the Court's construction of "linked user identification module," it would be improper to sanction Uniloc for failing to amend its Contentions to address one of the four limitations that Samsung attempted to cram into that term, particularly when three of them were abandoned even by Samsung. So too, it would be unjust to sanction Uniloc for Dr. Easttom's attempts to address the Court's claim construction.

**VI.**      **CONCLUSION**

For the foregoing reasons, Uniloc respectfully requests that Samsung's Motion be denied.

Date: March 30, 2020                                 Respectfully submitted,

                                                                   */s/ Aaron S. Jacobs*
                                                                   Paul J. Hayes

       Brian A. Tollefson
       Kevin Gannon
       Aaron S. Jacobs
       PRINCE LOBEL TYE LLP
       One International Place - Suite 3700
       Boston, MA 02110
       Tel: 617-456-8000
       Email: phayes@princelobel.com
       Email: btollefson@pricelobel.com
       Email: kgannon@princelobel.com
       Email: ajacobs@princelobel.com

       Edward R. Nelson III
       ed@nelbum.com
       Texas State Bar No. 00797142
       NELSON BUMGARDNER ALBRITTON PC
       3131 West 7th Street, Suite 300
       Fort Worth, TX 76107
       Tel: (817) 377-9111

       Shawn Latchford
       shawn@nbafirm.com
       Texas State Bar No. 24066603
       NELSON BUMGARDNER ALBRITTON PC
       111 West Tyler Street
       Longview, TX 75601
       Tel: (903) 757-8449

       ATTORNEYS FOR THE PLAINTIFF

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Aaron S. Jacobs*