**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| UNILOC 2017 LLC, | |
| *Plaintiff*, | |
| v. | Civil Action No. 2:18-cv-508-JRG |
| SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG ELECTRONICS CO. LTD. | ███████████████████ ███████████████████ |
| *Defendants*. | |

███████████████

**SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

*ACTIVE 49523074v8*

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.    ISSUES PRESENTED ......................................................................................... 1

III.    STATEMENT OF UNDISPUTED MATERIAL FACTS ..................................... 2

    A.    The '654 Patent ........................................................................................2

    B.    The Accused Products...............................................................................4

    C.    Uniloc's Original Infringement Theory ...................................................6

    D.    The Court's Markman Order Undermined Uniloc's Infringement Theory.................7

    E.    Dr. Easttom's Expert Report and Uniloc's New Infringement Theory .................8

IV.    LEGAL STANDARDS ......................................................................................... 9

    A.    Summary Judgment ..................................................................................9

    B.    Direct Infringement..................................................................................10

    C.    Indirect Infringement ...............................................................................11

V.    ARGUMENT ..................................................................................................... 12

    A.    The Accused Products Do Not Have a "Linked User Identification Module" as Required By All Asserted Claims ...................................12

        1.    The Accused Products Do Not Have a "Linked User Identification Module" Under the Court's Claim Construction.......................13

        2.    The Accused Products Do Not Have a "Linked User Identification Module" Even Under Uniloc's New Claim Construction of "Normal Operation".......................14

    B.    The Accused Products' Lock Screen Does Not Prevent "Normal Operation," as Required By All of the Asserted Claims .......................16

    C.    The Accused Products Do Not Have a "Timing Means" as Required By Claims 1, 3, 5, and 7 ...................................................................18

    D.    Uniloc Has Failed to Present Any Evidence of Infringement for the Majority of the Accused Products .......................................................20

    E.    Uniloc Has Failed to Show Any Evidence of Direct Infringement by Samsung ...............................................................................................21

        1.    Samsung Cannot Directly Infringe Apparatus Claims 1, 3, 5, 7, 17, and 18.......................21

        2.    Samsung Cannot Infringe the Method Claims...........................................23

        3.    There is Insufficient Evidence to Raise a Triable Issue of Fact That Samsung Has "Used" the Accused Products in the United States.............25

    F.    Uniloc Has Failed to Demonstrate Indirect Infringement by Samsung ...................27

i

1.      Summary Judgment of No Indirect Infringement Should be
        Entered Because Uniloc Cannot Demonstrate Direct Infringement ..........27

2.      Uniloc Has Not Adduced Any Evidence of Knowledge by
        Samsung of Infringement by Third Parties ................................................28

3.      Uniloc Has Adduced No Evidence of Acts By Samsung Intended
        to Induce Infringement ..............................................................................29

4.      Summary Judgment of No Contributory Infringement Should Be
        Entered Because Uniloc Has Not Adduced Any Evidence of No
        Substantial Non-Infringing Use of the Accused Products ........................30

VI.     CONCLUSION ......................................................................................................... 30

*ACTIVE 49523074v8*

## <u>TABLE OF AUTHORITIES</u>

**Cases**     **Page(s)**

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.*,
   501 F.3d 1307 (Fed. Cir. 2007)....................................................................................11, 26

*C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*,
   911 F.2d 670 (Fed. Cir. 1990)..............................................................................................9

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)......................................................................................................9, 10

*Centillion Data Sys., LLC v. Qwest Communs. Int'l*,
   631 F.3d 1279 (Fed. Cir. 2011)....................................................................................22, 23

*Commil USA, LLC v. Cisco Sys., Inc.*,
   135 S. Ct. 1920 (2015)............................................................................................11, 12, 28

*Cordis Corp. v. Boston Sci. Corp.*,
   561 F.3d 1319 (Fed. Cir. 2009)..........................................................................................15

*Dodots Licensing Solutions LLC v. Lenovo Holding Co.*,
   2018 U.S. Dist. LEXIS 213202 (D. Del. Dec. 19, 2018).......................................................24

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006)..........................................................................................28

*Ecolab, Inc. v. FMC Corp.*,
   569 F.3d 1335 (Fed. Cir. 2009)..........................................................................................28

*Eli Lilly & Co. v. Barr Labs., Inc.*,
   251 F.3d 955 (Fed. Cir. 2001)............................................................................................10

*EMG Tech., LLC v. Vanguard Grp., Inc.*,
   2014 U.S. Dist. LEXIS 191718 (E.D. Tex. June 24, 2014)...................................................10

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010)....................................................................................10, 23

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010)....................................................................................12, 30

*Johnston v. IVAC Corp.*,
   885 F.2d 1574 (Fed. Cir. 1989)..........................................................................................10

*Joy Techs., Inc. v. Flakt, Inc.*,
   6 F.3d 770 (Fed. Cir. 1993)..........................................................................10, 11, 23, 24, 27

iii

*Koninklijke Philips N.V. v. Zoll Med. Corp.*,
    656 F. App'x. 504 (Fed. Cir. 2016) ..................................................................28

*Meyer Intellectual Props. Ltd. v. Bodum, Inc.*,
    690 F.3d 1354 (Fed. Cir. 2012)..................................................................10, 23, 26

*Mirror Worlds, LLC v. Apple, Inc.*,
    784 F. Supp. 2d 703 (E.D. Tex. 2011) ....................................................11, 26, 27

*Ormco Corp. v. Align Tech., Inc.*,
    463 F.3d 1299 (Fed. Cir. 2006)......................................................................11, 24

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    843 F.3d 1315 (Fed. Cir. 2016)..........................................................................11

*Ricoh Co. v. Quanta Computer Inc.*,
    550 F.3d 1325 (Fed. Cir. 2008)......................................................................11, 24

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012)..........................................................................30

*TQP Dev., LLC v. Intuit Inc.*,
    2014 WL 2810016 (E.D. Tex. June 20, 2014)....................................................10

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997).............................................................................................10

*ACTIVE 49523074v8*

## I.      INTRODUCTION

Pursuant to Fed. R. Civ. P. 56, Defendants Samsung Electronics America, Inc. ("SEA") and Samsung Electronics Co., Ltd. ("SEC") (collectively, "Samsung") respectfully move for summary judgment of non-infringement of U.S. Patent No. 6,836,654 (the "'654 patent") (Ex. 1).[1] Following the Court's *Markman* Order, the infringement theory on which Plaintiff Uniloc 2017 LLC ("Uniloc") has relied since the outset of the case became, in Uniloc's own words, "untenable." Thus, Uniloc has made a last-ditch effort to save its case by concocting an entirely new infringement theory based on a new claim construction for a term that was never proposed for construction by the parties or in fact construed by the Court in this case. Indeed, its new infringement theory is based on a construction that differs from a construction for the same term to which Uniloc agreed in another case asserting the '654 patent before this Court. Regardless, as demonstrated below, even Uniloc's new theory has no merit. Accordingly, summary judgment of non-infringement should be entered.

## II.      ISSUES PRESENTED

1.      Whether the accused Samsung smartphones utilize a "linked user identification module" when they can make outgoing calls with numerous SIM cards.

2.      Whether the accused "lock screen" functionality prevents normal operation when outgoing calls can be made without first entering a deblocking code.

3.      Whether the accused Samsung smartphones have a "timing means" even though the inactivity timer functions independent of a SIM card.

4      Whether Uniloc has sufficient evidence to raise a triable issue of material fact that all of the accused Samsung smartphones have been made, used, sold, offered for sale, or imported, in the United States by Samsung.

5.      Whether Samsung or the accused Samsung smartphones directly infringe the asserted apparatus and method claims.

6.      Whether there is sufficient evidence to raise a triable issue of material fact that Samsung induces end users to infringe the Asserted Claims, or contributes to the

---

[1] Unless otherwise indicated, all Exhibits are attached to the Declaration of Allan A. Kassenoff in Support of Samsung's Motion for Summary Judgment of Non-Infringement.

infringement of the Asserted Claims.

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    The '654 Patent

According to the '654 patent, because mobile devices "are intended to accompany their users when they move around," they are frequently "lost or stolen." ('654 patent at 1:16-18). One alleged solution to this problem described in the patent is disclosed in U.S. Patent No. 5,913,175 (the "'175 patent"). The '175 patent purports to prevent a lost or stolen telephone from being used by a third party by "*establishing a link between the device and a specific user identification module* [e.g., a SIM card] and blocking the normal operation of the device [i.e., making outgoing calls] when the user identification module that is placed inside the device is not the one that is linked to the device." ('654 patent at 1:24-29).[2] In other words, if a phone is lost or stolen and the *original* (linked) SIM card is replaced with *another* SIM card, then the phone will not be able to make outgoing calls. However, even with that solution, a drawback still existed since, if the phone was lost or stolen along with its original SIM card, for at least some period of time, a third party could make outgoing calls using the phone which, at the time of the alleged invention in 1999, was quite expensive. (*See id.* at 1:30-37 ("When the device is lost or stolen with the identification module to which it is linked . . . the device can be freely used until the identification module to which it is linked is blocked via the network" which "may take a certain period of time.")). According to the '654 patent, preventing such unauthorized usage between the time the phone was lost and the time the owner blocked the phone via the network was an "object of the invention." (*Id.* at 1:40-41).

The '654 patent purports to achieve this object of preventing unauthorized usage as follows: First, "a device [i.e., a phone] in accordance with the invention (1) verifies a user identification module

---

[2] All emphasis is added unless otherwise noted.

[e.g., a SIM card] mounted inside the mobile radiotelephony device is *linked* to the mobile radiotelephony device," much like the prior art. (*Id.* at 1:39-43). Then, the device "(2) detects a period of *inactivity* of the mobile radiotelephony device during a normal operation of the mobile radiotelephony device, wherein the normal operation includes a processing of all outgoing calls, and (3) *prevents the normal operation* of the mobile radiotelephony device in response to the verification of the user identification module and in response to the detection of the period of inactivity of the mobile radiotelephony device." (*Id.* at 1:43-51). Once normal operation is prevented, a "deblocking code" must "be supplied to return to the normal operation mode." (*Id.* at 2:11-12). Thus, as explained in the '654 patent, the alleged invention prevents a third party from using a lost or stolen phone to make expensive outgoing calls, other than during that small window of time before the phone is automatically locked due to the period of inactivity:

> [W]hen the device falls into the hands of a third party together with the identification module to which it is linked, it has *most probably been inactive for a period of time that is sufficiently long for its normal operation to be blocked* (advantageously, the inactive time after which the blocking means are activated is of the order of several minutes). *The device cannot thus be used without the deblocking code being supplied.*

> Thanks to the invention the lost or stolen device becomes totally unusable. A fraudulent person cannot send communications at the cost of the owner of the device. *But neither can he use the device with another identification module.*

(*Id.* at 1:52-63).

Independent claims 1 and 10 of the '654 patent are similar in scope (albeit one is directed to the device and the other to a method) and are reproduced below:

| **Claim 1** | **Claim 10[3]** |
|---|---|
| A mobile radiotelephony device, comprising:<br>  blocking means for preventing a normal operation of the mobile radiotelephony device, wherein the normal operation includes a processing of outgoing calls; | A method of protecting a mobile radiotelephony device, the method comprising:<br>    verifying [sic] a user identification module mounted inside the mobile radiotelephony |

---

[3] Independent claim 17 is similar to claim 10, but is written as a "computer readable medium" claim.

timing means for activating the blocking means in response to the mobile radiotelephony device being inactive during the normal operation of the mobile radiotelephony device for a defined period of time subsequent to a mounting of a linked user identification module inside the mobile radiotelephony device; and

deblocking means for permitting the normal operation of the mobile radiotelephony device in response to a supply of a deblocking code to the mobile radiotelephony device subsequent to the mounting of the linked user identification module inside the mobile radiotelephony device and subsequent to the defined period of time.

device is linked to the mobile radiotelephony device;

detecting a period of inactivity of the mobile radiotelephony device during a normal operation of the mobile radiotelephony device, wherein the normal operation includes a processing of all outgoing calls;

preventing the normal operation of the mobile radiotelephony device in response to the verification of the linked user identification module and in response to the detection of the period of inactivity of the mobile radiotelephony device.

## B.    The Accused Products

In Plaintiff's Disclosure of Asserted Claims and Infringement Contentions, Uniloc has accused over 100 models of Samsung smartphones (the "Accused Products") of infringing the '654 patent by use of a "lock screen" that can be activated after a period of inactivity. (*See* Ex. 2 ("Infringement Contentions") at 1–2). The Accused Products are sold by Samsung as: (1) "unlocked" phones, which can make calls using *any* SIM card from *any* network carrier or (2) "network locked" phones, which can make calls using *any* SIM card from a *particular* network carrier (e.g., a Verizon locked phone can make calls using *any* Verizon SIM card). (Expert Report on Non-Infringement by Nenad Medvidovic, Ph.D., Ex. 3 ("Medvidovic Rpt.") ¶¶60-61, 104-106, 176-177). Thus, all of the Accused Products can make outgoing calls with *more than one* SIM card. (*Id.*) Users may utilize different SIM cards in a single device for several reasons. For example, a user may use one SIM card for network access while in the United States and a different one while travelling overseas. Another user may use one SIM card for business and a different one for personal use. And yet another user may use two SIM cards to switch phone numbers or networks. (*Id.* ¶¶106, 183). Importantly, Samsung's "unlocked" phones are sold *without* a SIM card installed and a user must obtain, install, and use one or more SIM cards for their preferred network(s).  (*Id.* ¶60).

4

The Accused Products cannot make outgoing calls over a carrier network unless and until a user (or carrier or retail representative setting up a phone on a user's behalf, e.g., an employee in a Verizon store) activates a SIM card through the Setup Wizard activation process. (*Id.* ¶¶59, 178). During that setup process, the carrier network, e.g., Verizon, performs a SIM provisioning check to confirm the SIM card's status and verify that it can connect with a network. (*Id.*)

While SIM cards are required to make or receive calls over a carrier's network, SIM cards are not required for other uses of the Accused Products. (*Id.* ¶¶125-128). For example, SIM cards are not required to utilize the phone's camera, Wi-Fi, or various applications on the phone. (*Id.*) The Accused Products can even make outgoing voice calls or send messages, *without* a SIM card, by using voice-over-IP (VoIP) applications, such as Skype, Google Voice, or WhatsApp. (*Id.*)

When Samsung sells the Accused Products, the phones do not have an activated secure lock screen. (*Id.* ¶¶56, 76-77, 143, 201-202). Rather, as part of the phone's setup process, a user has the option to set up a lock screen (or not to). Specifically, a user could opt to utilize no lock screen, "Swipe" (which is an unsecured lock screen that is disengaged by dragging your finger across the screen), "Pattern" (which requires dragging your finger across a series of dots in a particular order), a PIN code, a password, or a biometric, such as a fingerprint, iris scan, and facial recognition. (*Id.*) The default setting of the Accused Products is to have an unsecured lock screen. (*Id.*)

If a user sets up a secure lock screen, the user can unlock the device and make outgoing calls by entering the selected pattern, PIN, password, or biometric. (*Id.* ¶¶56-57, 76-77). Alternatively, some Accused Products can make outgoing calls using a voice-activated assistant called Bixby – without having to first enter the selected pattern, PIN, password, or biometric. (*Id.* ¶¶89-93). Bixby is engaged by saying "Hi, Bixby," after which a user can say "Call [contact]" to make an outgoing call. (*Id.*) Outgoing calls can also be made without first entering a PIN/password/pattern/biometric through use

of Smart Lock or Auto Lock, which unlocks the phone based on its proximity to another Samsung device (e.g., a Galaxy Gear watch) or its location (e.g., users can make hands-free calls from their cars without having to unlock the device). (*Id.* ¶¶55, 96-97). Additionally, the lock screen does not prevent users from making calls to any individual that a user sets as an ICE ("in case of emergency") or an Emergency Contact. (*Id.* ¶¶79-87). Users can choose to set an unlimited number of contacts as ICE/emergency contacts, and ICE/emergency contacts can be called for any reason whatsoever without first unlocking the device. (*Id.*)

By default, the Accused Products have an inactivity timer that will cause the screen to turn off after 30 seconds. (*Id.* ¶¶98, 153, 155). This is a battery saving feature that can be modified by the user. (*Id.*) If the user chooses to set up a secure lock screen, when the screen is turned off by the inactivity timer, a lock screen is also activated by the device. (*Id.*) The inactivity timer and lock screen are active whether or not a SIM card is inserted in the device. (*Id.*)

### C.    Uniloc's Original Infringement Theory

Since the outset of this case and up until the Court issued its *Markman* Order, Uniloc had taken the position that the Accused Products infringe claims 1, 3, 5, 7, 10-11, 13-14, 17, and 18 of the '654 patent (the "Asserted Claims") because, when a "linked user identification module" (e.g., a SIM card) is placed in the phone, and when the phone is inactive for a certain period of time, the phone will lock until the user inputs his or her PIN/pattern/biometric (i.e., what Uniloc asserts is the "deblocking code"). Importantly, it had been Uniloc's position that *any* SIM card could be used with the phone and still infringe.

Specifically, in its Infringement Contentions, Uniloc alleged that the Accused Products' use of a "lock screen" that can be activated after a period of inactivity and unlocked using a pattern/PIN/biometric infringes the '654 patent. (Infringement Contentions (Ex. 2), Ex. A thereto, at 6-13). With respect to the "linked user identification module" and "timing means" limitations of the

Asserted Claims, Uniloc stated: "[S]ubsequent to a valid SIM card (user identification module) *being inserted* into the Accused Products and the security functionality being enabled, access to the Accused Products is blocked after a time period . . . has passed since the last interaction." (*Id.* at 6). Uniloc's infringement theory was confirmed through its claim construction briefing where it argued that "[t]he claims do not require that *the user identification module is the only one that performs normal operation of the device.*" (Dkt. 42 at 7; Dkt. 48 at 1-3 ("Thus, a linked user identification module does not have to be *the only one that performs normal operation of the device.*"); Dkt. 64 at 1-3 ("[T]he patent recognizes that both *linked and unlinked user identification modules may be used to process calls, even if another user identification module has been linked.*"); Dkt. 62 at 9:2-7, 10:8-11, 12:3-10).

During the claim construction proceedings, Uniloc's expert, Dr. Easttom, similarly asserted:

> [T]here are embodiments in the patent that allow non-linked user identification modules to make calls. *See, e.g.*, col. 4, ll. 23-30. Therefore, I do not agreed [sic] that the linked user identification module must be the only one that permits normal operation of the device.

(Dkt. 41-6 at ¶¶27-29).[4] And, at the *Markman* hearing, Uniloc's counsel asserted that "it is Uniloc's position that *linked doesn't in this case mean the only one that permits normal operation*. . . . There's nothing in the claim that suggests it is the one and only one." (Dkt. 62 at 8:24-9:7; *see also id.* at 10:8-11, 12:7-10).

The reason Uniloc was forced to take this position was clear – as discussed in Section III.B above, all of the Accused Products work, i.e., are able to make outgoing calls, using more than one SIM card.

### D.  The Court's *Markman* Order Undermined Uniloc's Infringement Theory

On January 21, 2020, in its *Markman* Order (Dkt. 61), the Court rejected Uniloc's claim

---

[4] The Declaration of Dr. William C. Easttom II (Chuck Easttom) Concerning Claim Construction of U.S. Patent. No. 6,836,654 was struck as untimely (Dkt. 59).

7

construction arguments for the term "linked user identification module," which eviscerated Uniloc's

infringement theory. Specifically, the Court held that a "linked user identification module" is "a user

identification module that is the *only one that* permits normal operation of the device." (*Id.* at 17). The

Court made clear that "physically connecting a module to a device (e.g., by inserting it into the device

or attaching it to the device via a chain link) does not mean the device is 'linked' as 'linked' is used in

the patent." (*Id.* at 16). The Court also stated that a device cannot operate normally with an unlinked

user identification module: "Neither the Pinault prior-art patent nor the '654 Patent provide any

example in which a mobile device linked to a linked user identification module may operate normally

without the linked user identification module." (*Id.* at 14).

The Court also construed the "timing means" limitation of claim 1 as having the following

structure: "device with a microprocessor assembly programmed to execute the algorithms set forth in

the '654 Patent at col.3 ll.32-43, and equivalents thereof." (*Id.* at 36). In addition, the Court ruled that

the "timing means" algorithm first checks to ensure that a "linked user identification module" is

"placed inside the device":

> *If the identification module that is placed inside the device is linked to the device*
> *(arrow Y4)*, one looks whether the device has remained in the state of availability
> for a certain period of time T of the order of several minutes, for example (box
> K10). If this is not the case (arrow N10), the device remains in the state of
> availability indicated in box Kl. If this is the case (arrow Yl0), the device passes on
> to a second blocking state indicated in box K11.

(*Id.* at 35 (citing '654 patent (Ex. 1) at col. 3 ll. 31-39)). The Court explained "that the timing means is

engaged *only after* insertion of the linked user identification module." (*Id.*)

### E. Dr. Easttom's Expert Report and Uniloc's New Infringement Theory

Following the issuance of the Court's *Markman* Order, Uniloc realized that its entire

infringement theory had been rendered – in its own words – "untenable." (Dkt. 96 at 14). Rather than

dismiss its case (as it should have), Uniloc "changed [its] theory of the case." (*Id.*) This proved difficult,

however, since, as its expert Dr. Easttom ████████████████████████████████████

████████████████████████████████ (*See* Expert Report of William C. Easttom II (Chuck

Easttom) Regarding Infringement of U.S. Patent No. 6,836,654 ("Easttom Rpt.") (Ex. 4) ¶¶204-210).

Therefore, Uniloc devised an entirely new theory of infringement which relies on a brand-new

construction for "normal operation" which finds no support in the Court's *Markman* Order or the

intrinsic evidence and is inconsistent with Uniloc's construction of the term in another case before this

Court.[5] In fact, Dr. Easttom recognizes that he had to "define normal operation" himself. (*Id.* ¶138).

In his report, Dr. Easttom asserts:████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ (*Id.* ¶21; *see also id.* ¶¶144, 205,

212). Thus, Dr. Easttom asserts that the Accused Products have ██████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████ (*Id.* ¶212; *see also id.* ¶205██████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████

## IV.     LEGAL STANDARDS

### A.     Summary Judgment

A grant of summary judgment is proper if the pleadings and evidence show that "there is no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is as

---

[5] Samsung moved to strike Dr. Easttom's construction of "normal operation" and other new opinions in the Easttom Report, as well as Uniloc's Amended Infringement Contentions, which were served after the Easttom Report was served. (Dkt. 77).

appropriate in a patent case as it is in any other case." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990).

"[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the summary judgment movant demonstrates the absence of a genuine dispute over any material fact, the burden shifts to the non-movant to show there is a genuine factual issue for trial. *Id.* at 325. "A genuine issue exists if the evidence is such that a reasonable jury could find for the nonmoving party," and "[a] disputed fact is material if it might affect the outcome of the suit such that a finding of that fact is necessary and relevant to the proceeding." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001). "The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence." *EMG Tech., LLC v. Vanguard Grp., Inc.*, 2014 U.S. Dist. LEXIS 191718, at *6 (E.D. Tex. June 24, 2014). And, "conclusory assertions, even from experts, are not sufficient to avoid summary judgment." *TQP Dev., LLC v. Intuit Inc.*, 2014 WL 2810016, at *10 (E.D. Tex. June 20, 2014).

## B.    Direct Infringement

To establish literal infringement of a patent, every limitation set forth in a claim must be found in an accused product. *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989). When a claim limitation is not present in an accused device, either literally or under the doctrine of equivalents, the court must grant summary judgment of non-infringement. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997).

"To infringe a method claim, *a person* must have practiced all steps of the claimed method." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206 (Fed. Cir. 2010).  In other words, "[a] method claim is directly infringed only by one practicing the patented method." *Joy Techs., Inc. v.*

*Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993); *see also Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir. 2012) ("[D]irect infringement of a method claim requires a showing that every step of the claimed method has been practiced."); *Mirror Worlds, LLC v. Apple, Inc.*, 784 F. Supp. 2d 703, 713 (E.D. Tex. 2011), *aff'd*, 692 F.3d 1351 (Fed. Cir. 2012) ("Actual practice of the specific claim steps is required to infringe the asserted method claims.").

Furthermore, it is well-settled that "[m]ethod claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006); *see also Joy Techs.*, 6 F.3d at 773 ("The law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)."); *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008) ("[A] party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a).").

### C.      Indirect Infringement

To establish a claim for induced infringement, a plaintiff must demonstrate "first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007); *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016) ("To prove inducement of infringement, the patentee must [] show that the accused inducer took an affirmative act to encourage infringement") (quoting *Astornet Techs. Inc. v. BAE Sys., Inc.*, 802 F.3d 1271, 1279 (Fed. Cir. 2015)). Additionally, "liability for induced infringement can only attach if the defendant knew of the patent and knew as well that 'the induced acts constitute patent infringement.'" *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011)).

To establish contributory infringement, the patent owner must show: "1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).  Also, "[l]ike induced infringement, contributory infringement requires knowledge of the patent in suit *and knowledge of patent infringement*." *Commil*, 135 S. Ct. at 1926.

## V.   ARGUMENT

### A.   The Accused Products Do Not Have a "Linked User Identification Module" as Required By All Asserted Claims

It cannot be reasonably disputed that all of the Asserted Claims require a "linked user identification module." Specifically, independent claims 1, 10, and 17, which are the only independent claims in the '654 patent, include the following limitations: "mounting of a linked user identification module inside the mobile radiotelephony device" (claim 1); and "verification of the linked user identification module" (claims 10 and 17). As a result, in his report, Dr. Easttom discusses the requirement of a "linked user identification module" (i.e., a SIM card) with regard to every limitation of every Asserted Claim. (*See generally* Easttom Rpt. (Ex. 4) ¶¶55-360). Indeed, Dr. Easttom asserts that ███████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ (*Id.* ¶¶147-148). And, at his deposition, Dr. Easttom ████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████ (Deposition Transcript of Dr. Chuck Easttom ("Easttom Tr.") (Ex. 5) at 134:9-135:4, 137:2-21).

As discussed above and further below, however, none of the Accused Products utilize a "linked user identification module" because the Samsung smartphones can make outgoing calls with multiple SIM cards—not "*only one*" particular SIM card. Thus, the Accused Products do not meet the "linked

12

user identification module" limitations of all the Asserted Claims.

### 1.    The Accused Products Do Not Have a "Linked User Identification Module" Under the Court's Claim Construction

The Court construed "linked user identification module" as "a user identification module that is the only one that permits normal operation of the device." (*Markman* Order (Dkt. 61) at 17). Under that construction, Uniloc has conceded that its original infringement theory is "untenable." (Dkt. 96 at 14). This is because, as discussed in Section III.B, *supra*, there can be no dispute that the Accused Products can make outgoing calls with *multiple* SIM cards. Samsung's expert, Dr. Medvidovic, demonstrated this fact in his report through product testing, source code analysis, and citations to Samsung documents and websites. (Medvidovic Rpt. (Ex. 3) ¶¶60-62, 104-115, 176-177).

Uniloc's expert Dr. Easttom



(Easttom Tr. (Ex. 5) at 63:14-22, 64:3-15). Dr. Easttom

(*Id.* at 284:11-15; *id.* at 37:5-38:1). Indeed,

(*Id.* at 212:19-213:22). Moreover, there is no dispute that the Accused Products

*Id.* at 151:5-152:8, 153:4-10, 222:17-223:4).

As demonstrated above, there is no genuine dispute that the Accused Products can make outgoing calls with multiple SIM cards (or with no SIM card at all). Accordingly, because there is no

"user identification module that is *the only one* that permits normal operation of the device," the Accused Products do not have a "linked user identification module" as construed by the Court.

> ### 2. The Accused Products Do Not Have a "Linked User Identification Module" Even Under Uniloc's New Claim Construction of "Normal Operation"

As discussed above, because it cannot show that the Accused Products can make outgoing calls with *only one* SIM card, Uniloc was forced to "change[] [its] theory of the case" (Dkt. 96 at 14) in the Easttom Report by asserting that "normal operation" requires ███████████████████████ ████████████████████████[6] (Easttom Rpt. (Ex. 4) ¶144; *see also id.* ¶¶21, 205, 320). But even Uniloc's new theory, which is based on a claim construction that is at odds with—and finds no support in—the intrinsic evidence, cannot succeed.

Claim 1 recites that "normal operation includes a processing of [i.e., making] outgoing calls." Claims 10 and 17 similarly recite that "normal operation includes a processing of all outgoing calls." While Uniloc did not request construction of "normal operation" in this case, consistent with the language of the claims, Uniloc agreed in another case before this Court that, in the context of the '654 patent, "normal operation" means "operation of the mobile radio telephony device that includes the processing of all outgoing calls." (Dkt. 77 at 4-5).

Here, however, Dr. Easttom now asserts for the first time (after the Court's *Markman* Order) that "normal operation" ██████████████████████████████████████ ████████████████████████ (Easttom Rpt. (Ex. 4) ¶144; *see also id.* ¶¶21-23, 138-143, 145-149, 194, 204-210, 212, 213, 225, 226, 309, 320). But, as Dr. Easttom ███████████ ████████████████████████████████████████████████

---

[6] As discussed above in Section III.B, Uniloc repeatedly argued during claim construction that "a linked user identification module *does not have to be the only one that performs normal operation of the device.*" (Dkt. 48 at 1-3; Dkt. 64 at 1-3).



(Easttom Tr. (Ex. 5) at 111:14-17). In addition, Dr. Easttom ███████████████████████████████████████████████████████████████████████████████████ (*id.* at 247:2-4):

Accordingly, Dr. Easttom's proposed construction of "normal operation" is not supported by the claim language, or any other intrinsic evidence, and should be rejected. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009) (to disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender).

Moreover, even if Uniloc's proposed construction for "normal operation" were correct—it is not—Dr. Easttom ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████ For example, Dr. Easttom testified that ███████████████████████████████████████

*ACTIVE 49523074v8*

████████████████████████████████████████████████████

████████████████████████████████████████

(Easttom Tr. (Ex. 5) at 283:17-284:10; *see also id* at 286:10-288:7). Accordingly, Dr. Easttom ███

████████████████████████████████████████████████████████

███████████████████████████████████████████████ And, as

discussed above, there is no dispute that users of the Accused Products can obtain and use as many

SIM cards as they desire.

      Thus, even under Uniloc's own, unsupported, construction of "normal operation," the Accused

Products can have "normal operation" with *multiple* SIM cards and do not have the claimed "linked

user identification module."

### B.    The Accused Products' Lock Screen Does Not Prevent "Normal Operation," as Required By All of the Asserted Claims

      The Accused Products cannot infringe any of the Asserted Claims of the '654 patent for

another, independent reason. Independent claims 1, 10, and 17 all require "preventing [a/the] normal

operation" of the device which "includes a processing of [all] outgoing calls." However, the Accused

Products can *always* make outgoing calls, even when the screen is locked and without first supplying

a deblocking code.

      Claim 1 requires that the mobile radiotelephony device include, *inter alia*: (1) a "blocking

means for preventing a normal operation of the mobile radiotelephony device;" (2) a "timing means

for activating the blocking means in response to the radiotelephony device being inactive during the

normal operation . . . subsequent to a mounting of a linked user identification module;" and (3) a

"deblocking means for permitting the normal operation . . . in response to a supply of a deblocking

code." ('654 patent (Ex. 1), claim 1). Claims 10 and 17 similarly require, *inter alia*: (1) "verifying a

user identification module mounted inside the mobile radiotelephony device is linked;" (2) "detecting

a period of inactivity;" and (3) "preventing the normal operation . . . in response to the verification of

*ACTIVE 49523074v8*

the linked user identification module and in response to the detection of a period of inactivity." (*Id.* at claims 10 and 17). Dependent claims 11 and 18 require, *inter alia*: "permitting the normal operation . . . in response to a supply of a deblocking code." Thus, all of the Asserted Claims require that the mobile device prevents outgoing calls from being made after both the "linked user identification module" is mounted in the phone and there has been a period of inactivity. Once normal operation is prevented, outgoing calls cannot be made without first supplying a deblocking code.

There is no dispute that users of the Accused Products can ████████████████████ ███████████████████████████████████████ (Easttom Tr. (Ex. 5) at 127:8-128:4). For example, ███████████████████████████████████████████████ (*Id.*) There is also no dispute that ███████████████████████████████████ (*Id.*) Furthermore, Uniloc does not dispute that ████████████████████████████ (*Id.* at 126:12-127:7; Infringement Contentions (Ex. 2), chart at 18 ██████████████████████████ And, despite being aware of this functionality, Dr. Easttom does not address it in his expert report. (Easttom Tr. (Ex. 5) at 230:4-11). Thus, for at least this reason, "normal operation" is never "prevented" in the Accused Products, as required by all of the Asserted Claims.

There is also no dispute that users of some of the Accused Products can make outgoing calls, even when the phone is locked, through the use of Bixby and voice calling, by simply saying "Hi, Bixby." (Medvidovic Rpt. (Ex. 3) ¶¶89-93). Indeed, Dr. Easttom again did not address these features in his expert report. (Easttom Tr. (Ex. 5) at 228:19-229:19). Instead, Dr. Easttom has asserted that ████ ██████████████████████████████████████ (Expert Rebuttal Report of Dr. William C. Easttom II (Chuck Easttom) Regarding the Validity of U.S. Patent No. 6,836,654 (Ex. 6) ¶269).

There is also no dispute that the Accused Products can be used to make outgoing calls without

entering a PIN/password/pattern/biometric through use of Smart Lock or Auto Lock, which unlocks the phone based on its proximity to another trusted Samsung device (e.g., a Samsung watch) or a particular location (e.g., allowing a user to make hands-free calls from the user's car). (Medvidovic Rpt. (Ex. 3) ¶¶55, 96-97). Dr. Easttom was aware of this functionality as well, but did not address it in his Infringement Report. (Easttom Tr. (Ex. 5) at 231:2-11).

Thus, there is no genuine dispute that the Accused Products can operate normally, i.e., make outgoing calls, at all times – even when the phone is locked and even without first entering a "deblocking code." Summary judgment of non-infringement should therefore be entered for this reason as well.

### C. The Accused Products Do Not Have a "Timing Means" as Required By Claims 1, 3, 5, and 7

The Court's construction of "timing means" of claim 1 requires that a "linked user identification module" be "placed inside the device" *before* an inactivity timer will run:

> *If the identification module that is placed inside the device is linked to the device (arrow Y4)*, one looks whether the device has remained in the state of availability for a certain period of time T of the order of several minutes, for example (box K10). If this is not the case (arrow N10), the device remains in the state of availability indicated in box Kl. If this is the case (arrow Yl0), the device passes on to a second blocking state indicated in box K11 by passing through an initialization step K12 which permits to initialize a variable A which represents the number of attempts made at supplying a deblocking code (for example, the Personal Identification Number) PIN.

(*Markman* Order (Dkt. 61) at 34-36, '654 patent (Ex. 1) at col. 3 ll. 32-43). As the Court further explained, "the timing means is engaged *only after insertion* of the linked user identification module." (*Markman* Order (Dkt. 61) at 35). Because the Accused Products engage the inactivity timer and lock screen regardless of whether a "linked user identification module" has been inserted, those devices cannot infringe these claims.

There is no dispute that the inactivity timer of the Accused Products is a default setting that

*ACTIVE 49523074v8*

██████████████████ (Easttom Tr. (Ex. 5) at 231:18-234:8). There is also no dispute that the

████████████████████████████████████████████████████████████████████████████

███████████████████████████████ *Id.* at 237:5-19). Thus, the Accused Products do

not first check whether "the identification module that is placed inside the device is linked to the device

(arrow Y4)" as required by the claims.██████████████████████████████████████



(*Id.* at 235:3-236:16). Dr. Easttom ████████████████████████████████████████████

████████████ (*Id.* at 239:12-21; *id.* at 210:12-211:9).

Thus, Uniloc cannot show that the Accused Products perform the required "confirmation (or

verification) step, 'box k4' in Figure 3, that activates the timing means" or that the Accused Products

have a "timing means" that "is engaged *only* after insertion of the linked user identification module,"

as is required by the Court's construction. (*Markman* Order (Dkt. 61) at 35). Accordingly, the Court

should grant summary judgment of non-infringement of claims 1, 3, 5, and 7 for this additional reason.

### D. Uniloc Has Failed to Present Any Evidence of Infringement for the Majority of the Accused Products

There is no dispute that, to infringe the asserted apparatus claims, a device must be made, used, sold, offered for sale, or imported *into the United States*. (Easttom Rpt. (Ex. 4) ¶41; Easttom Tr. (Ex. 5) at 168:21-24). In addition, there is no dispute that, to infringe the asserted method claims, all of the claimed steps must be performed *in the United States*. (*Id.*) However, neither Uniloc nor Dr. Easttom has provided any evidence of either of these things. And, Uniloc's damages expert, Mr. Bratic, referenced sales in the United States for only █ of the over 100 Accused Products as having been sold into the United States (Exhibit 7 to the Expert Report of Walter Bratic and Justin R. Blok (Ex. 7)). In short, Uniloc has failed to adduce any evidence demonstrating that any of the following Accused Products directly infringe the Asserted Claims in this case: Galaxy J7 Duo; Galaxy J7 Prime 2; Galaxy J2 Pro; Galaxy J2; Galaxy C7; Galaxy Note FE; Galaxy J7 MAX; Galaxy J7 Pro; Galaxy J5; Z4; Galaxy C5 Pro; Galaxy XCover 4; Galaxy J1 mini prime; Galaxy C7 Pro; Galaxy A7; Galaxy A5; Galaxy A5 Duos; Galaxy A9; Galaxy Grand Prime Plus; Galaxy J2 Prime; Galaxy C9 Pro; Galaxy On7; Galaxy On8; Galaxy E7; Galaxy A3; Galaxy Fame; Galaxy Premier; Galaxy Pocket; Omnia M; Z3; Galaxy Star; Galaxy Trend; Galax Win; Galaxy I8250; Galaxy J Max; Galaxy Grand 2; Galaxy Express 2; Galaxy Beam; Galaxy V; Galaxy K Zoom; Galaxy Beam2; Galaxy A6+; Galaxy A8; Galaxy Ace; Galaxy Core; Galaxy M Style; Galaxy Mini; Star 3; and W999 (collectively, the "Foreign Accused Products").

Dr. Easttom cites ███████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████



(Easttom Tr. (Ex. 5) at 169:11-172:23). Dr. Easttom ████████████████████████████████

████████████████████████████████████████████████████████ (*Id.* at 172:5-

23).

Thus, to the extent the statements by Uniloc's damages expert even constitute evidence of

sales, Uniloc has presented no evidence of the manufacture, sale, offer for sale, importation or use in

the United States for the Foreign Accused Products. Accordingly, summary judgment of no

infringement should be entered as to at least the Foreign Accused Products.

### E.     Uniloc Has Failed to Show Any Evidence of Direct Infringement by Samsung

#### 1.     Samsung Cannot Directly Infringe Apparatus Claims 1, 3, 5, 7, 17, and 18

Neither Uniloc nor Dr. Easttom has asserted divided infringement in this case and, thus, to

demonstrate direct infringement of the asserted apparatus claims (claims 1, 3, 5, 7, 17, and 18), Uniloc

must demonstrate that Samsung itself sells Accused Products in the United States containing all of the

elements of those claims. Uniloc has not done so, however, since: (1) unlocked phones are sold by

21

Samsung *without* a SIM card installed and, thus, do not have a "linked user identification module"; and (2) none of the Accused Products can make outgoing calls over a carrier network, i.e., be in "normal operation" (even under Uniloc's new claim construction) *until* a user activates a SIM card. Accordingly, the Court should grant summary judgment of no direct infringement by Samsung because the Accused Products cannot infringe the asserted apparatus claims without user involvement. *Centillion Data Sys., LLC v. Qwest Communs. Int'l*, 631 F.3d 1279, 1288 (Fed. Cir. 2011) (finding no direct infringement because defendant does not "combine all of the claim elements . . . [t]he customer, not [defendant] completes the system by . . . installing the client software").

First, as to Samsung's unlocked phones, Dr. Easttom ▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉ In fact, at his deposition, Dr. Easttom said ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉



(Easttom Tr. (Ex. 5) at 191:23-192:4). Accordingly, Dr. Easttom ▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (*Id.* at 154:19-155:19). And, as discussed above, Dr. Easttom ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (*Id.* at 134:9-135:4, 137:2-21). Because there is no dispute that the unlocked phones are sold by Samsung without SIM cards installed, Samsung's unlocked phones cannot infringe any of the asserted apparatus claims.

Second, there is no dispute that none of the Accused Products can make outgoing calls, i.e., be in "normal operation" (even under Uniloc's new claim construction), unless a user, or carrier or retail representative on behalf of a user, first activates a SIM card in the Accused Device through the Setup

22

Wizard. (Medvidovic Rpt. (Ex. 3) ¶¶59, 178). While Dr. Easttom ███████████████████ in his

expert report in Paragraphs 156 ██████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████ and 213 ██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████ (Easttom Tr. (Ex. 5) at 20:16-21:9; 33:5-7; 79:17-23; 221:10-

223:13). Thus, there is no dispute that the Accused Products cannot make all outgoing calls, and thus

cannot be in "normal operation" (even under Uniloc's new claim construction), prior to activation of a

SIM card in the phone by a user and/or carrier representative. Because both a user and a carrier need

to take certain actions before the Accused Products can even be alleged to infringe the asserted

apparatus claims, Samsung cannot directly infringe those claims. *Centillion*, 631 F.3d at 1288.

### 2. Samsung Cannot Infringe the Method Claims

According to Dr. Easttom, ████████████████████████████ infringe the asserted

method claims of the '654 patent. (Easttom Rpt. (Ex. 4) ¶¶310, 325, 340, 344, 376, 378). For example,

at his deposition, Dr. Easttom stated ████████████████████████████████

████  ████████████████████████████████████████████████

████  ████

(Easttom Tr. (Ex. 5) at 128:21-25; *id.* at 141:22-142:20).

Uniloc has also alleged that Samsung directly infringes the asserted method claims by ██████

████████████████████████████████████ (Easttom Report ¶364). Each of these

positions lacks merit.

First, it is well-settled that, "[t]o infringe a method claim, *a person* must have practiced all steps

of the claimed method." *Finjan, Inc.*, 626 F.3d at 1206. In other words, "[a] method claim is directly

infringed only by one practicing the patented method." *Joy Techs.*, 6 F.3d at 775; *see also Meyer*, 690

F.3d at 1366 ("[D]irect infringement of a method claim requires a showing that every step of the claimed method has been practiced."). In fact, this Court held last year, in a prior case involving Uniloc and Samsung, that "accused devices on their own cannot infringe the asserted method claims." (Pretrial Hearing Transcript (*Uniloc USA v. Samsung Elec. Am., Inc.*, No. 2:17-cv-651-JRG, Dkt 170 (E.D. Tex. Mar. 4, 2019)) ("Pretrial Hrg. Tr.) (Ex. 8) at 62:22-63:1). In that case, the Court rejected Dr. Easttom's opinions that method claims could be directly infringed by Samsung's accused products, and granted Samsung's motion for summary judgment of no direct infringement of the method claims. (*Uniloc USA v. Samsung Elec. Am., Inc.*, No. 2:17-cv-651-JRG, Dkt. 173 (E.D. Tex. Mar. 8, 2019) (Ex. 9)). Accordingly, the Court should do the same in this case and grant summary judgment that the Accused Products cannot infringe method claims 10, 11, 13, and 14.

In addition, it is also well-settled that "[m]ethod claims are *only* infringed when the claimed process is *performed*, not by the sale of an apparatus that is capable of infringing use." *Ormco*, 463 F.3d at 1311; *see also Joy Techs.*, 6 F.3d at 773; *Ricoh*, 550 F.3d at 1335. In fact, as discussed above, last year, this Court rejected Dr. Easttom's opinions that method claims could be directly infringed by the sale of Samsung accused products, and granted Samsung's motion for summary judgment of no direct infringement. (Ex. 8 at 62:22-63:1; Ex. 9; *see also Dodots Licensing Solutions LLC v. Lenovo Holding Co.*, 2018 U.S. Dist. LEXIS 213202, at *5-7 (D. Del. Dec. 19, 2018) (citing the "well-established" law that method claims can *only* be infringed where each step has been performed, the Court held that "making, selling, offering to sell or importing the Accused Devices cannot – as a matter of law – constitute direct infringement of the [asserted method claims] within the meaning of § 271(a)")). Accordingly, the Court should do the same in this case and grant summary judgment that Samsung's sale, offering for sale, and importing of the Accused Products cannot infringe method claims 10, 11, 13, and 14.

*ACTIVE 49523074v8*

**3.   There is Insufficient Evidence to Raise a Triable Issue of Fact That Samsung Has "Used" the Accused Products in the United States**

As set forth above, Uniloc also alleges that Samsung directly infringes the Asserted Claims of the '654 patent by *using* the Accused Products. (Easttom Rpt. (Ex. 4) ¶¶364, 378). But, Uniloc has not adduced *any* evidence that Samsung, i.e., any Samsung employee, has used an Accused Product or otherwise performed the claimed method steps in the United States. Instead, Dr. Easttom alleges that ████████████████████████████████████████████████████ (*Id.* ¶¶365-366). For example, Dr. Easttom acknowledged at his deposition that ███████████████



(Easttom Tr. (Ex. 5) at 139:18-140:17; *see also id.* at 141:11-21, 263:14-264:3). Such "evidence" is insufficient. First, the Galaxy S10 is not an Accused Product. Second, Uniloc has no evidence that these employees working in a Sprint store and an AT&T store are somehow employed by Samsung. Indeed, Dr. Easttom ████████████████████████████████████████████████ ████████████████████ (*Id.* at 172:5-23).

25

Dr. Easttom further testified that, in his opinion, the user manuals for the Accused Products



(*Id.* at 261:24-262:22). But, again, the existence of manuals, and Dr. Easttom's own testing, is insufficient to demonstrate actual use *by Samsung*.

Moreover, the law is clear that a plaintiff "must prove specific instances of direct infringement," not just "[h]ypothetical instances." *ACCO Brands*, 501 F.3d at 1313-14.  As stated by the Federal Circuit in reversing the district court's grant of summary judgment based on "evidence" similar to what Uniloc relies upon, "[we] find it troubling that the district court based its direct infringement analysis on what it assumed happened, rather than on actual evidence of record. This assumption contradicts our well-established law that a patentee must prove infringement by a preponderance of the evidence." *Meyer*, 690 F.3d at 1370 (citations omitted).

This Court also considered – and rejected – similar assumptions of infringement in *Mirror Worlds, LLC v. Apple, Inc.*, when it granted Apple's motion for judgment as a matter of law of no

*ACTIVE 49523074v8*

direct infringement. 784 F. Supp. 2d 703 (E.D. Tex. 2011), *aff'd*, 692 F.3d 1351 (Fed. Cir. 2012).

Specifically, in that case, the Court found:

> Not only is it legally insufficient to show direct infringement of the method claims through Apple's sales, *it is insufficient to merely assume that Apple conducted tests that performed the method while the accused features were under development*. Mirror Worlds did not present any evidence of testing.  General development alone is insufficient to prove that Apple performed the claimed steps.  *Mirror Worlds' arguments that it is reasonable to infer that testing occurred during development of the accused features does not replace the evidence required to prove infringement.*
>
>          *         *         *
>
> *[D]irect infringement of a method claim cannot be determined on speculation, assumptions, or inferences.*  If it was inconceivable to Mirror Worlds that the accused features were not practiced by Apple, it should have had no difficulty in meeting its burden of proof and in introducing testimony of such use.  Mirror Worlds simply failed to present sufficient evidence from which a reasonable jury could find that Apple, or anyone else, practiced each and every step of the claimed methods by using the [accused features].

*Id.* at 713, 715. And, again, as discussed above, this Court granted summary judgment of no direct infringement by Samsung last year in a case in which Dr. Easttom, on behalf of Uniloc, relied on hypothetical activities in the United States by Samsung. (No. 2:17-cv-651-JRG, Dkt. 173 (Ex. 9) at 1).

Accordingly, the Court should grant summary judgment that Uniloc has failed to demonstrate the Samsung has "used" the Accused Products, or performed any of the asserted method claims, in the United States.

> **F.**      **Uniloc Has Failed to Demonstrate Indirect Infringement by Samsung**
>
>       **1.**      **Summary Judgment of No Indirect Infringement Should be Entered Because Uniloc Cannot Demonstrate Direct Infringement**

As discussed above, Uniloc has not and cannot demonstrate direct infringement of any of the Asserted Claims. Since direct infringement is a predicate for both inducement and contributory infringement, *see Joy Techs.*, 6 F.3d at 774 ("Liability for either active inducement of infringement or contributory infringement is dependent upon the existence of direct infringement"), summary judgment should be granted regarding Uniloc's indirect infringement claims.

### 2.      Uniloc Has Not Adduced Any Evidence of Knowledge by Samsung of Infringement by Third Parties

Both inducement and contributory infringement require knowledge of the patent-in-suit and knowledge of patent infringement. *Commil*, 135 S. Ct. at 1926. But, there is no evidence in the record that Samsung possessed knowledge of any alleged infringement of the '654 patent by anyone, including itself. In fact, the opposite is true since Samsung always believed its products do not – indeed, cannot – infringe the '654 patent because, among other reasons, they can be used with multiple SIM cards – a defense confirmed by the Court in its *Markman* Order and by Uniloc when it agreed that its theory of infringement was "untenable." As such, at a minimum, Samsung has, and has always had, a good faith belief of non-infringement of all Asserted Claims.

The Supreme Court has explained that if an accused infringer "reads the patent's claims differently from the plaintiff," and if "that reading is reasonable," then the accused infringer should not be liable for indirect infringement. *Commil*, 135 S. Ct. at 1928; *see also DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1307 (Fed. Cir. 2006) (finding a demonstrated belief of non-infringement sufficient to support a jury verdict that the defendant did not induce infringement); *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1351 (Fed. Cir. 2009), *amended on reh'g in part*, 366 F. App'x. 154 (Fed. Cir. 2009) (finding that a reasonable belief of non-infringement supported a jury verdict that the defendant lacked the intent required for induced infringement); *Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x. 504, 523 (Fed. Cir. 2016) (finding a reasonable belief of non-infringement is sufficient to support a jury's finding of insufficient knowledge for contributory infringement).

Here, since Samsung clearly had a reasonable belief that it does not infringe, a belief that was confirmed by the Court's *Markman* Order and Uniloc's own admission, no intent can be found and summary judgment of no indirect infringement should be entered.

### 3.   Uniloc Has Adduced No Evidence of Acts By Samsung Intended to Induce Infringement

Uniloc has also not provided any evidence, either in its Infringement Contentions or in Dr. Easttom's Infringement Report, that Samsung took any action that intentionally induced direct infringement by another. According to Dr. Easttom, ███████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████ (Easttom Rpt. (Ex. 4) ¶367). But, as Dr. Easttom testified during his deposition, he ██████████████████████ ██████████████████████ Easttom Tr. (Ex. 5) at 294:13-17). In addition, Dr. Easttom ██████████████████████████████████████ *Id.* at 144:17-145:11). Furthermore, Dr. Easttom ███████████████████████████████████████████████ ██████████

██ ████████████████████████████████ ████████████████████████████████ ██ ████████████████████████████████ ████████████████████████████ ██ ████████████████████████████████ ████████████████████████████████ ██ ██████████ ██████████████

(*Id.* at 236:17-237:4 (objection omitted)). Nor does Dr. Easttom provide evidence in his report that the user manuals ██████████████████████████████ *Id.* at 146:11-147:5). Thus, Dr. Easttom has not identified any acts by Samsung intended to induce any customer to infringe the '654 patent. Indeed, as discussed above, Samsung clearly had a reasonable belief that it does not infringe, a belief that was confirmed by the Court's *Markman* Order and Uniloc's own admission that its theory of infringement was "untenable." Accordingly, summary judgment of no induced infringement should

29

be granted.

### 4. Summary Judgment of No Contributory Infringement Should Be Entered Because Uniloc Has Not Adduced Any Evidence of No Substantial Non-Infringing Use of the Accused Products

Once again, Uniloc has provided no evidence, either in its Infringement Contentions or in Dr. Easttom's Infringement Report, that there are no substantial non-infringing uses for the Accused Products. *Fujitsu*, 620 F.3d at 1326 ("To establish contributory infringement, the patent owner must show . . . that the component has no substantial noninfringing uses"). On the other hand, Samsung's technical expert has pointed to several substantial non-infringing uses:

> Additionally, the Accused Products have substantial non-infringing uses. For example, the Accused Products are smartphones that can be used for multiple purposes even without a SIM card inserted. For example, the mobile phones can use the camera, use WiFi for Internet access or making phone calls, etc.

(Medvidovic Rpt. (Ex. 3) ¶¶281, 125-128). Because Uniloc has no evidence to rebut Samsung's evidence of substantial non-infringing use, summary judgment of no contributory infringement should be granted. *See Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) ("[Plaintiff] had the burden of proof, but failed to introduce evidence sufficient to create a genuine issue of material fact as to whether [a non-infringing use] was not a substantial non-infringing use.").

## VI. CONCLUSION

For all of the foregoing reasons, Samsung respectfully requests that the Court grant its motion for summary judgment of non-infringement.

Dated: April 24, 2020

By: */s/ Allan A. Kassenoff*
Richard A. Edlin
Allan A. Kassenoff
Justin A. Maclean
Jeffrey R. Colin
GREENBERG TRAURIG, LLP
MetLife Building, 200 Park Avenue
New York, NY 10002
Telephone: (212) 801-9200

Facsimile: (212) 801-6400
Email: edlinr@gtlaw.com
Email: kassenoffa@gtlaw.com
Email:  macleanj@gtlaw.com
Email:  colinj@gtlaw.com

Valerie W. Ho
GREENBERG TRAURIG, LLP
1840 Century Park East
Los Angeles, CA 90067
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
Email: hov@gtlaw.com

Melissa R. Smith
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

***Attorneys for Defendants Samsung Electronics Co.,
Ltd., and Samsung Electronics America, Inc.***

31

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 24th day of April 2020, all counsel of record are being served with a copy of this document via email.

/s/ Allan A. Kassenoff
Allan A. Kassenoff

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

Pursuant to Local Rule 5(a)(7)(A), the undersigned hereby certifies that the corresponding documents were filed under seal pursuant to the Court's Protective Order (Dkt. 23).

/s/ Allan A. Kassenoff
Allan A. Kassenoff
