IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| UNILOC 2017 LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.<br>and SAMSUNG ELECTRONICS CO. LTD.<br><br>*Defendants.* | Civil Action No. 2:18-cv-508-JRG<br><br>■■■■■■■■■■■■■■■■■■■■<br>■■■■■■■■■■■■■■■■■■■■ |

■■■■■■■■■■■■■■

**SAMSUNG'S *DAUBERT* MOTION TO EXCLUDE
CERTAIN OPINIONS AND TESTIMONY OF WILLIAM "CHUCK" EASTTOM II**

**TABLE OF CONTENTS**

I. FACTUAL BACKGROUND ..................................................................................... 2

    A. The Patent-in-Suit ............................................................................................2

    B. The Accused Products......................................................................................3

    C. Uniloc's Original Infringement Theory ...........................................................4

    D. The Court's Markman Order Undermined Uniloc's Infringement Theory .............4

    E. Dr. Easttom's Infringement Report and Uniloc's New Infringement Theory ..................................................................................5

    F. Dr. Easttom's Damages-Related Opinions......................................................6

II. ARGUMENT ................................................................................................................ 6

    A. Legal Standard .................................................................................................6

    B. Dr. Easttom's Opinions Regarding the Construction of "Normal Operation" Are Not Supported By, and Are Actually Inconsistent with, the Markman Order and Should Be Excluded ..........................................................7

    C. Dr. Easttom's Opinions with Respect to Infringement of the Method Claims Should Be Excluded as Unsupported and Unreliable ....................................9

    D. Dr. Easttom's Opinions Related to the '654 Patent's Alleged Contribution to the Security Features and Benefits of the Accused Products Should Be Excluded as Unsupported by Any Reliable Evidence or Analytical Methodology .....................................................................................................11

III. CONCLUSION ........................................................................................................... 14

i

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                    **Page(s)**

*BMC Software, Inc. v. Servicenow, Inc.*,
  2016 WL 367251 (E.D. Tex. Jan. 28, 2016) ...................................................................... 7, 9

*Comp. Acceleration Corp. v. Microsoft Corp.*,
  2007 WL 9724202 (E.D. Tex. Nov. 1, 2007) .................................................................. 11, 13

*ContentGuard Holdings, Inc. v. Amazon.com, Inc.*,
  2015 WL 4944514 (E.D. Tex. Aug. 19, 2015) ........................................................................ 7

*Cordis Corp. v. Boston Sci. Corp.*,
  561 F.3d 1319 (Fed. Cir. 2009) ............................................................................................... 8

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ....................................................................................................... 1, 6, 11

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010) ............................................................................................... 9

*Genband US LLC v. Metaswitch Networks Corp.*,
  2016 WL 122967 (E.D. Tex. Jan. 9, 2016) ............................................................................ 11

*GPNE Corp. v. Apple, Inc.*,
  2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) ....................................................................... 12

*Joy Techs., Inc. v. Flakt, Inc.*,
  6 F.3d 770 (Fed. Cir. 1993) ................................................................................................... 10

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ................................................................................................................ 6

*LaserDynamics, Inc. v. Quanta Comp., Inc.*,
  694. F.3d 51 (Fed. Cir. 2012) ................................................................................................ 13

*NetFuel, Inc. v. Cisco Sys.*,
  2020 U.S. Dist. LEXIS 46193 (N.D. Cal. Mar. 10, 2020) .................................................... 13

*Ormco Corp. v. Align Tech., Inc.*,
  463 F.3d 1299 (Fed. Cir. 2006) ............................................................................................. 10

*Stragent, LLC v. Intel Corp.*,
  2014 WL 1389304 (E.D. Tex. Mar. 6, 2014) ........................................................................ 11

*United States v. Valencia*,
  600 F.3d 389 (5th Cir. 2010) ................................................................................................... 7

Defendants Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd. (collectively, "Samsung") respectfully move to exclude certain opinions and testimony of Plaintiff Uniloc 2017 LLC's ("Uniloc") technical expert, Dr. William Easttom II. As discussed below, following the Court's Claim Construction Memorandum Opinion and Order ("*Markman* Order" (Dkt. 61)) in this case, the infringement theory on which Uniloc, and Dr. Easttom, has relied since the outset of the case became, in Uniloc's own words, "untenable." Thus, Uniloc has made a last-ditch effort to save its case by setting forth a new infringement theory, based on a new claim construction for "normal operation" – a term that was never construed in this case – that Uniloc's expert made up in his expert report. (Expert Report of Dr. William C. Easttom II (Chuck Easttom) Regarding Infringement of U.S. Patent No. 6,836,654 (the "'654 patent") ("Easttom Rpt.") (Ex. 1)).[1] This new infringement theory is inexcusably untimely,[2] and Dr. Easttom's construction of "normal operation" is unsupported, inconsistent with the Court's *Markman* Order, and fatally renders his infringement analysis unreliable for all Asserted Claims.

In addition, Dr. Easttom's damages-related opinions that 50% of the security features of the accused Samsung smartphones are covered by the '654 patent are equally unreliable. In reaching his opinions, Dr. Easttom did not consider *any* reviewable facts or data, such as published surveys or articles, testing results, statistical analysis, or Samsung documents. Instead, Dr. Easttom based his opinions solely on his "professional experience" concerning the relative "weight" of "various security features." Indeed, Dr. Easttom provides no analysis, citations, or explanation whatsoever for

---

[1] Unless otherwise indicated, all Exhibits are attached to the Declaration of Allan A. Kassenoff in Support of Samsung's *Daubert* Motion to Exclude Certain Opinions and Testimony of William "Chuck" Easttom II.

[2] As discussed in Samsung's pending Motion to Strike Portions of the Expert Report of Dr. William "Chuck" Easttom II and Uniloc's Amended Infringement Contentions, several of Dr. Easttom's infringement opinions should be stricken as untimely and highly prejudicial to Samsung. (*See* Dkts. 77 and 99).

his damages-related opinions and, therefore, they should be excluded as hopelessly unreliable.

For these reasons, and for the additional reasons discussed below, the Court should exclude Dr. Easttom's opinions as unreliable and legally improper.

## I.     FACTUAL BACKGROUND

### A.     The Patent-in-Suit

The '654 patent, entitled "Anti-Theft Protection for a Radiotelephony Device," is directed to technology for protecting a mobile radiotelephony device from unauthorized use. According to the '654 patent, because mobile devices "are intended to accompany their users when they move around," they are frequently "lost or stolen." ('654 patent (Ex. 2) at 1:16-18). One alleged solution to this problem provided in the patent is described in U.S. Patent No. 5,913,175 (the "'175 patent"). The '175 patent purports to prevent a lost or stolen telephone from being used by a third party by "*establishing a link between the device and a specific user identification module* [e.g., a SIM card] and blocking the normal operation of the device [i.e., making outgoing calls] when the user identification module that is placed inside the device is not the one that is linked to the device." ('654 patent (Ex. 2) at 1:24-29). In other words, if a device is lost or stolen and the *original* (linked) SIM card is replaced with *another* SIM card, the phone will not be able to make outgoing calls. However, even with that solution, a drawback still existed since, if the phone was lost or stolen along with its original SIM card, a third party could make outgoing calls for at least some time until the phone is blocked at the network level. (*Id.* at 1:30-37). According to the '654 patent, preventing such unauthorized usage between the time the phone was lost and the time the owner had the phone blocked via the network was an "object of the invention." (*Id.* at 1:40-41).

The '654 patent purports to achieve this object of preventing unauthorized usage as follows: First, "a device [i.e., a phone] in accordance with the invention (1) verifies a user identification module [e.g., a SIM card] mounted inside the mobile radiotelephony device is *linked* to the mobile

2

radiotelephony device," much like the prior art. (*Id.* at 1:39-43). Then, the device "(2) detects a period of *inactivity* of the mobile radiotelephony device during a normal operation of the mobile radiotelephony device, wherein the normal operation includes a processing of all outgoing calls, and (3) *prevents the normal operation* of the mobile radiotelephony device in response to the verification of the user identification module and in response to the detection of the period of inactivity of the mobile radiotelephony device." (*Id.* at 1:43-51). Once normal operation is prevented, a "deblocking code" must "be supplied to return to the normal operation mode." (*Id.* at 2:11-12).

### B. The Accused Products

In Plaintiffs' Disclosure of Asserted Claims and Infringement Contentions, Uniloc has accused over 100 models of Samsung smartphones (the "Accused Products") of infringing the '654 patent by use of a "lock screen" that can be activated after a period of inactivity. ("Infringement Contentions") (Ex. 3) at 1–2). The Accused Products are sold by Samsung as: (1) "unlocked" phones, which can make calls using *any* SIM card from *any* network carrier or (2) "network locked" phones, which can make calls using *any* SIM card from a *particular* network carrier (e.g., a Verizon locked phone can make calls using *any* Verizon SIM card). (Expert Report on Non-Infringement by Nenad Medvidovic, Ph.D., ("Medvidovic Rpt.") (Ex. 4) ¶¶60-61, 104-106, 176-177). Thus, all of the Accused Products can make outgoing calls with *more than one* SIM card. (*Id.*) Accordingly, all Accused Products utilize removable SIM cards, which can be installed/removed/switched at the user's discretion. (*Id.*; *see also id.* ¶99). Importantly, Samsung's "unlocked" phones are sold without a SIM card included such that a user can obtain, install, and use one or more SIM cards for their preferred network(s). (*Id.* ¶60).

While SIM cards are required to make or receive calls over a network carrier, SIM cards are not required to utilize the phone's camera, Wi-Fi, or various other applications on the phone. (*Id.* ¶¶125-128). The Accused Products can even make outgoing voice calls or send messages,

3

*without* a SIM card, by using voice-over-IP (VoIP) applications, such as Skype. (*Id.*)

### C. Uniloc's Original Infringement Theory

Since the outset of this case and up until the Court issued its *Markman* Order, Uniloc had taken the position that the Accused Products infringe claims 1, 3, 5, 7, 10, 11, 13, 14, 17 and 18 of the '654 patent (the "Asserted Claims") because, when a "linked user identification module" (i.e., a SIM card) is placed in the phone, and when the phone is inactive for a certain period of time, the phone will lock until the user inputs his or her PIN/pattern/biometric (i.e., what Uniloc asserts is the "deblocking code"). Importantly, it had been Uniloc's position that *any* SIM card could be used with the phone and still infringe.

With respect to the "linked user identification module" limitation, Uniloc stated: "subsequent to a valid SIM card (user identification module) being inserted into the Accused Products and the security functionality being enabled, access to the Accused Products is blocked after a time period . . . has passed since the last interaction." (*Id.*) In other words, as made clear through its claim construction briefing, Uniloc's infringement theory was that "[t]he claims do not require that *the user identification module is the only one that performs normal operation of the device*." (Dkt. 42 at 7; *see also* Dkt. 48 at 1-3 ("Thus, a linked user identification module does not have to be *the only one that performs normal operation of the device.*"); Dkt. 64 at 1-3 ("[T]he patent recognizes that both *linked and unlinked user identification modules may be used to process calls, even if another user identification module has been linked.*"); Dkt. 62 at 8:24-9:7, 10:8-11, 12:3-10).

The reason Uniloc was forced to take this position was because, as discussed in Section I.B, all of the Accused Products can operate, i.e., make outgoing calls, using more than one SIM card.

### D. The Court's *Markman* Order Undermined Uniloc's Infringement Theory

On January 21, 2020, in its *Markman* Order (Dkt. 61), the Court rejected Uniloc's claim construction arguments for the term "linked user identification module," which eviscerated Uniloc's

4

infringement theory. Specifically, the Court held that a "linked user identification module" is "a user identification module that is the *only one that* permits normal operation of the device." (*Id.* at 17). The Court made clear that, "physically connecting a module to a device . . . does not mean the device is 'linked' as 'linked' is used in the patent." (*Id.* at 16). The Court also stated that a device cannot operate normally with an *unlinked* user identification module: "Neither the Pinault prior-art patent nor the '654 Patent provide any example in which a mobile device linked to a linked user identification module may operate normally without the linked user identification module." (*Id.* at 14).

### E. Dr. Easttom's Infringement Report and Uniloc's New Infringement Theory

The Court's *Markman* Order rendered Uniloc's infringement theory "untenable" and Uniloc "changed [its] theory of the case" in the Easttom Report. (Dkt. 96 at 14). This is because, as admitted in the Easttom Report, multiple SIM cards may be used to make outgoing calls in all of the Accused Products. (Easttom Rpt. (Ex. 1) ¶¶204-210). Therefore, Dr. Easttom "looked to define normal operation," which is an element of every Asserted Claim, himself:



(*Id.* ¶¶138, 144). Thus, Dr. Easttom asserts that the Accused Products ███████████ ███████████ ███████████ ███████████ ███████████ 21-23, 138-149, 194, 204, 206-210, 213, 225-226, 309).

5

### F. Dr. Easttom's Damages-Related Opinions

In his Report, Dr. Easttom included his opinions on what "security features and benefits provided by the accused Samsung devices are directly attributable to the asserted claims of the Patent-in-Suit." (*Id.* ¶361). Dr. Easttom identified a list of "various security features that Samsung advertises relating to the accused products." (*Id.*) Dr. Easttom also provided percentages for ███ ████████████████████████████████████████████ (*Id.*) Dr. Easttom provided no explanation or analysis for how he determined ████████████████████████████████████ ████████████████████████████████ (*Id.*)

## II. ARGUMENT

### A. Legal Standard

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702. Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied regarding an expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable

and relevant to be helpful to the finder of fact and thus warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

### B. Dr. Easttom's Opinions Regarding the Construction of "Normal Operation" Are Not Supported By, and Are Actually Inconsistent with, the *Markman* Order and Should Be Excluded

It is well understood that experts are not allowed "to render any conclusions regarding the scope of the patents-in-suit or particular claim limitations that contradict or deviate from this Court's Claim Construction Memorandum and Order" and are "excluded from providing any opinions based on an interpretation of the Court's construction that is the equivalent of any construction that the Court previously considered and expressly rejected." *BMC Software, Inc. v. Servicenow, Inc.*, 2016 WL 367251, at *2 (E.D. Tex. Jan. 28, 2016); *see also ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, 2015 WL 4944514, at *4 (E.D. Tex. Aug. 19, 2015) (same). Nevertheless, Dr. Easttom's infringement opinions—for *all* of the Asserted Claims—rely on his own, made-up, construction of "normal operation," which is not supported by, and is actually inconsistent with, the Court's *Markman* Order as well as the intrinsic evidence.

Claim 1 recites that "normal operation includes a processing of [i.e., making] outgoing calls." Claims 10 and 17 similarly recite that "normal operation includes a processing of all outgoing calls." While Uniloc did not request construction of "normal operation" in this case, consistent with the language of the claims, Uniloc agreed in another case before this Court that, in the context of the '654 patent, "normal operation" means "operation of the mobile radio telephony device that includes the processing of all outgoing calls." (Dkt. 77 at 4-5).

Here, however, Dr. Easttom asserts for the first time (following the Court's *Markman* Order) that "normal operation" means ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Easttom Rpt. (Ex. 1) ¶144; *see also id.* ¶¶21-23, 138-143, 145-149, 194, 204-210, 212, 213, 225, 226, 309, 320). Dr. Easttom admits that because "[t]he court did not

7

construe 'normal operations[]' . . . the first place *I looked to define normal operation* was the '654 patent itself." (*Id.* ¶138). But, Dr. Easttom



(Deposition Transcript of Dr. Chuck Easttom ("Easttom Tr.") (Ex. 5) at 111:14-17). In addition, Dr. Easttom

(*Id.* at 247:2-4). Accordingly, Dr. Easttom's construction of "normal operation" is not supported by the Court's *Markman* Order, the claim language, or any other intrinsic evidence, and should be rejected as improperly limiting the scope of the term. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009) (to disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender).

Furthermore, the Court expressly rejected Uniloc's assertion that "the patent allows for non-linked user identification modules to make calls in certain embodiments" (Dkt. 42 at 6; Dkt. 48 at 1) in the *Markman* Order:

> Neither the *Pinault* prior-art patent nor the '654 Patent provide any example in which a mobile device linked to a linked user identification module may operate normally without the linked user identification module. Plaintiff's reliance on the '654 Patent's disclosure at column 4, lines 23–30 is misplaced.

(*Markman* Order (Dkt. 61) at 14). But, Dr. Easttom relies upon his "normal operation" argument

8

to assert that very same, rejected argument:



(Easttom Tr. (Ex. 5) at 37:8-38:1, 110:9-16). Because Dr. Easttom is using his construction of "normal operation" in a way that was expressly considered and rejected by the Court in its *Markman* Order, it should be excluded. *BMC Software*, 2016 WL 367251, at *2.

### C. Dr. Easttom's Opinions with Respect to Infringement of the Method Claims Should Be Excluded as Unsupported and Unreliable

According to Dr. Easttom,  (Easttom Ret. (Ex. 1) ¶¶310, 325, 340, 344, 376). For example, at his deposition, Dr. Easttom stated

(Easttom Tr. (Ex. 5) at 128:21-25; *id.* at 141:22-142:20).

However, it is well-settled that, "[t]o infringe a method claim *a person* must have practiced all steps of the claimed method." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206 (Fed.

9

Cir. 2010). In other words, "[a] method claim is directly infringed only by one practicing the patented method." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993). In fact, similar opinions of Dr. Easttom in a prior case involving Uniloc and Samsung have already been rejected by the Court. Specifically, this Court held last year that "accused devices on their own cannot infringe the asserted method claims" (*Uniloc USA v. Samsung Elec. Am. Inc.*, No. 2:17-cv-651-JRG, Dkt. 170 (E.D. Tex. Mar. 4, 2019) (Ex. 6) at 62:22-63:1) and rejected Dr. Easttom's opinions that method claims could be directly infringed by Samsung's accused products (*Uniloc USA v. Samsung Elec. Am. Inc.*, No. 2:17-cv-651-JRG, Dkt 173 (E. D. Tex. Mar. 8, 2019) (Ex. 7) at 1-2). Thus, the Court granted Samsung's motion for summary judgment of no direct infringement of the method claims and struck Dr. Easttom's report as to direct infringement by Samsung. (*Id.*)

Furthermore, "[m]ethod claims are *only* infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006). First of all, Dr. Easttom failed to provide any specific opinions as to whether any specific Samsung entity induced infringement: ▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬ (*Id.* at 143:24-144:16). Further, Dr. Easttom has not adduced *any* evidence that Samsung, i.e., any Samsung employee, has used an Accused Product or otherwise performed the claimed method steps in the United States. Instead, Dr. Easttom alleges that ▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Easttom Rpt. (Ex. 1) ¶¶365-366; Easttom Tr. (Ex. 5) at 139:18-140:17, 141:11-21, 263:14-264:3). Such "evidence" is insufficient. First, the Galaxy S10 is not even an Accused Product. Second, employees of Sprint and AT&T are not employed by Samsung. Indeed, Dr. Easttom ▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Easttom Tr. (Ex. 5) at 172:5-

10

23).

Accordingly, because his opinions are based on conclusory assertions and a misapplication of the law, the Court should exclude Dr. Easttom's opinions and testimony that Samsung and/or the Accused Products directly infringe method claims 10, 11, 13, and 14 of the '654 patent.

**D. Dr. Easttom's Opinions Related to the '654 Patent's Alleged Contribution to the Security Features and Benefits of the Accused Products Should Be Excluded as Unsupported by Any Reliable Evidence or Analytical Methodology**

In his Report, Dr. Easttom opined that 50% of the Accused Products' "security" is directly attributable to the '654 patent. He apparently arrived at that opinion by identifying various security features in the Accused Products, ███████████████████████ ███████████████████ (Easttom Rpt. (Ex. 1) ¶361). However, Dr. Easttom's opinions are "not based on any theory that meets the *Daubert* criteria of verifiability, peer review or publication, an acceptable error rate, or general acceptance in the scientific community." *Stragent, LLC v. Intel Corp.*, 2014 WL 1389304, at *4 (E.D. Tex. Mar. 6, 2014) (excluding expert testimony because "[t]here is no scientific basis for [the expert's] arbitrary assumption about the value of the accused feature"); *see also Genband US LLC v. Metaswitch Networks Corp.*, 2016 WL 122967, at *5 (E.D. Tex. Jan. 9, 2016) (excluding the expert's testimony because his methodology was "highly speculative and not supported by sufficient 'facts or data'").

Courts look at several factors when assessing the reliability of an expert's testimony including: (1) "whether the theory or technique underlying the expert's testimony can be or has been tested"; (2) the "known or potential rate of error of the technique and the existence and maintenance of standards controlling the technique's operation"; (3) "whether the theory or technique has been subjected to peer review and publication"; (4) "whether the expert's testimony is based on sufficient facts or data"; and (5) "whether the expert has unjustifiably extrapolated a conclusion from a premise." *Comp. Acceleration Corp. v. Microsoft Corp.*, 2007 WL 9724202, at *2-3 (E.D. Tex. Nov.

1, 2007) (citing *Daubert*, 509 U.S. at 594). Each of these factors weighs in favor of excluding Dr. Easttom's opinions.

First, Dr. Easttom's ▇▇▇ are allegedly based ▇▇▇ ▇▇▇ (Easttom Tr. (Ex. 5) at 310-12-313:8 320:20-321:18). Dr. Easttom did not record these ▇▇▇ ▇▇▇ ▇▇▇ (*Id.* at 326:13-24, 327:9-16). Such alleged oral "discussions" underlying Dr. Easttom's opinions could not possibly have been tested and clearly have not been subjected to peer review or publication. *See GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247, at *5-6 (N.D. Cal. Apr. 16, 2014) (finding that "'30 years of experience' does not constitute 'sufficient facts or data,' or 'reliable principles and methods'" and that "[w]ithout a methodology . . . cross-examination is futile").

Second, there cannot be any known or potential rate of error of Dr. Easttom's ▇▇▇ ▇▇▇ Thus, his resulting ▇▇▇ are entirely unreliable. *GPNE*, 2014 WL 1494247, at *5.

Third, Dr. Easttom's testimony is not based on *any* reviewable facts or data. Dr. Easttom ▇▇▇ ▇▇▇ (Easttom Tr. (Ex. 5) at 322:22-323:1). Additionally, while Dr. Easttom asserted that his ▇▇▇ (*see, e.g., id.* at 323:2-20, 301:23-303:16), he relied on no articles, statistical analysis, or Samsung documents or surveys to calculate his percentages. To the contrary, he ▇▇▇

12

███████████████████████████ (*Id.* at 293:21-294:17, 324:9-22, 328:24-329:8, 334:18-335:5). In fact, Dr. Easttom testified that ████████████████████ ████████████████ *Id.* at 336:17-337:12; *see also id.* at 305:22-306:9). In addition, Dr. Easttom ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████ (*Id.* at 300:25-301:22, 304:21-305:21). Given the total lack of reviewable data for [Dr. Easttom's] opinions . . ., [t]his factor weighs heavily against admitting" Dr. Easttom's opinions and testimony. *Comp. Acceleration*, 2007 WL 9724202, at *3.

Finally, there is no justification for Dr. Easttom's opinions that 50% of the security features of the Accused Products are taught by the '654 patent. For example, Dr. Easttom asserts that the '654 patent teaches "Biometric Sensors (i.e., fingerprint, iris, facial recognition." (Easttom Rpt. (Ex. 1) ¶361). But, Dr. Easttom admitted at his deposition that the '654 patent ████████████ ████████████████████████████████ (Easttom Tr. (Ex. 5) at 43:18-21, 317:5-16). Without having explained *how* he arrived at each percentage in his chart, Dr. Easttom's percentages "appear[] to have been plucked out of thin air based on vague qualitative notions of the relative importance of [the security features]." *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694. F.3d 51, 69 (Fed. Cir. 2012); *NetFuel, Inc. v. Cisco Sys.*, 2020 U.S. Dist. LEXIS 46193, at *19-20 (N.D. Cal. Mar. 10, 2020) (same).

In sum, because Dr. Easttom's "failed to provide the methodology underlying his apportionment amount or explain how he arrived at [his percentages] based on the facts of this case, his apportionment is not backed by 'sufficient facts or data' or by 'reliable principles and methods" and should therefore be excluded. *NetFuel*, 2020 U.S. Dist. LEXIS 46193, at *22.

13

### III. CONCLUSION

For all of the above reasons, Samsung respectfully requests that the Court exclude the foregoing opinions and testimony of Dr. Easttom.

Dated: April 24, 2020

Respectfully submitted,

By: */s/ Allan A. Kassenoff*
Richard Edlin
Allan A. Kassenoff
Justin A. MacLean
Jeffrey R. Colin
GREENBERG TRAURIG, LLP
MetLife Building, 200 Park Avenue
New York, NY 10002
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: edlinr@gtlaw.com
Email: kassenoffa@gtlaw.com
Email: macleanj@gtlaw.com
Email: colinj@gtlaw.com

Valerie W. Ho
GREENBERG TRAURIG, LLP
1840 Century Park East
Los Angeles, CA 90067
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
Email: hov@gtlaw.com

Melissa R. Smith
Bar No. 24001351
GILLAM & SMITH LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

*Attorneys for Defendants Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd.*

15

## CERTIFICATE OF CONFERENCE

On April 24, 2020, Allan Kassenoff, Valerie Ho, and Melissa Smith, counsel for Samsung, conferred with Aaron Jacobs, Brian Tollefson, and Kevin Gannon, counsel for Uniloc, as required by Local Rule 7(h). Counsel for Uniloc confirmed that Uniloc opposes this motion. Discussions conclusively ended at an impasse, leaving an open issue for the Court to resolve.

                                                                   */s/ Allan A. Kassenoff*
                                                                   Allan A. Kassenoff

## CERTIFICATE OF SERVICE

The undersigned certifies that on this April 24, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document by electronic mail under Local Rule CV-5(d).

<i>/s/ Allan A. Kassenoff</i><br>
Allan A. Kassenoff

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule 5(a)(7)(A), the undersigned hereby certifies that the corresponding documents were filed under seal pursuant to the Court's Protective Order (Dkt. 23).

<i>/s/ Allan A. Kassenoff</i><br>
Allan A. Kassenoff