**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| UNILOC 2017 LLC, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 2:18-cv-508-JRG-RSP |
| SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG ELECTRONICS CO. LTD. | ████████████████ ████████████████ |
| *Defendants.* | |

████████████

**SAMSUNG'S *DAUBERT* MOTION TO EXCLUDE
CERTAIN OPINIONS AND TESTIMONY OF UNILOC'S DAMAGES EXPERT
WALTER BRATIC**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................... 1

II.     FACTUAL BACKGROUND ............................................................................ 1

        A.      Uniloc Contends That Samsung Sold Mobile Devices With Lock Screens That
                Infringe The '654 Patent, But Lock Screens Were Already Known In The Art. ... 1

        B.      Although Mr. Bratic Could Not Say What Incremental Benefit Was Conferred By
                The '654 Patent, He Claims Damages of ████████ Through Q2 2020. ........... 3

        C.      Mr. Bratic Ignores A Mountain Of Real-World Evidence. ................................... 4

III.    ARGUMENT ..................................................................................................... 5

        A.      Mr. Bratic And Dr. Easttom Fail To Reliably Apportion Damages To Account For
                Only The Value Attributable To The '654 Patent. .................................................. 6

                1.      Dr. Easttom's Chart Is Pulled From Thin Air. ............................................ 7

                2.      Mr. Bratic And Dr. Easttom Do Not Isolate And Separate The Value Of
                        The Allegedly Infringing Features From The Value Of The Non-
                        Infringing Features And Components. ........................................................ 8

        B.      Mr. Bratic's Use Of Samsung Surveys Is Arbitrary And Unreliable. .................. 10

                1.      Mr. Bratic Assumes, With No Basis, That The Samsung Survey He Relies
                        On Implicates The '654 Patent. ................................................................ 10

                2.      Mr. Bratic Improperly Equates The Percentage Of Responses To A
                        Product Positioning Survey With The Percentage Of Revenue. ............... 11

                3.      Mr. Bratic Cherry Picks One Samsung Survey. ....................................... 12

        C.      Mr. Bratic Improperly Relies On An ████████████████████ For
                His 50/50 Economic Benefit Split. ...................................................................... 13

        D.      Mr. Bratic Relies On Other Non-Comparable Agreements .................................. 14

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*BMC Software, Inc. v. ServiceNow, Inc.*,
   2016 WL 379620 (E.D. Tex. Feb. 1, 2016) ...............................................................9

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)..............................................................................................5, 7, 10

*E.E.O.C. v. Freeman*,
   778 F.3d 463 (4th Cir. 2015) ................................................................................12

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014).............................................................................6

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)...............................................................................................7

*Intelligent Verification Sys., LLC. v. Microsoft Corp.*,
   2015 WL 1518099 (E.D. Va. Mar. 31, 2015) ......................................................10

*Konrick v. Exxon Mobil Corp.*,
   2016 WL 439361 (E.D. La. Feb. 4, 2016) ............................................................12

*Micro Chem., Inc. v. Lextron, Inc.*,
   317 F.3d 1387 (Fed. Cir. 2003)..............................................................................5

*Paz v. Brush Engineered Materials, Inc.*,
   555 F.3d 383 (5th Cir. 2009) ................................................................................7

*Rembrandt Soc. Media, LP v. Facebook, Inc.*,
   22 F. Supp. 3d 585 (E.D. Va. 2013) .....................................................................11

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010)................................................................................6

*Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*,
   2019 WL 2267212 (E.D. Tex. April 17, 2019)..................................................6, 10

*ACTIVE 50084829v3*

## I.     INTRODUCTION

The opinions of Uniloc 2017 LLC's ("Uniloc") damages expert, Walter Bratic, should be excluded because they are perfunctory, unreliable and biased. <u>First</u>, Mr. Bratic violated the golden rule of patent damages – apportionment – by failing to identify and separate the value of the allegedly infringing features of Samsung's accused products from the other features and components that Uniloc's own technical expert, Dr. Chuck Easttom, ███████████████████ ███████████   In fact, Mr. Bratic did no apportionment at all, relying instead on Dr. Easttom's "Apportionment Factor," which Dr. Easttom pulled from thin air without any supporting analysis, research, testing, data, or peer-reviewed publications. <u>Second</u>, Mr. Bratic cherry-picked one Samsung survey, ignored at least 18 others, and employed no discernible methodology in selecting and using survey data. <u>Third</u>, he ███████████████████████████ relates to the technology of the '654 patent. <u>Fourth</u>, Mr. Bratic improperly equated the percentage of consumer responses in the survey to the percentage of a feature's contribution to Samsung's overall profits for the accused products. He did no analysis to justify this one-to-one correlation for a single accused product, much less all 100+ accused products sold since 2012. <u>Fifth</u>, Mr. Bratic improperly relied on an inadmissible, ████████████████████████████ ████████████████   to support his claim that, in a hypothetical negotiation, Samsung would have agreed to equally split the benefits from the licensed patent. <u>Sixth</u>, he improperly relies on admittedly non-comparable license agreements so he and Uniloc could prejudice the jury with high dollar figures. His damages opinions are beyond flawed and should be excluded.

## II.     FACTUAL BACKGROUND

**A.     Uniloc Contends That Samsung Sold Mobile Devices With Lock Screens That Infringe The '654 Patent, But Lock Screens Were Already Known In The Art.**

According to U.S. Patent No. 6,836,654 (the "'654 patent"), preventing unauthorized usage

1

of a mobile phone between the time the phone is lost and the time the owner blocks the phone via the network was an "object of the invention." (Ex. 1, '654 patent at 1:40-41.)[1] The '654 patent purports to achieve this object of preventing unauthorized usage as follows: First, "a device [i.e., a phone] in accordance with the invention (1) verifies a user identification module [e.g., a SIM card] mounted inside the mobile radiotelephony device is linked to the mobile radiotelephony device," much like the prior art. (*Id*. at 1:39-43.) Then, the device "(2) detects a period of inactivity of the mobile radiotelephony device during a normal operation of the mobile radiotelephony device, wherein the normal operation includes a processing of all outgoing calls, and (3) prevents the normal operation of the mobile radiotelephony device in response to the verification of the user identification module and in response to the detection of the period of inactivity of the mobile radiotelephony device." (*Id*. at 1:43-51.) Once normal operation is prevented, a "deblocking code" must "be supplied to return to the normal operation mode." (*Id*. at 2:11-12.)

Uniloc's technical expert, Dr. Easttom, admitted that ████████████████████ ████████████████████████████████████████████████████████████████████ ██████████ (Ex. 3, Easttom Dep. at 9:1-9, 10:23-12:13.) Mr. Bratic did not discuss any of these points with Dr. Easttom and did not know the incremental benefit provided by the '654 patent:



[1] All exhibits are attached to the Declaration of Valerie Ho.

2



(Ex. 4, Bratic Dep. at 64:6-81:2.)

**B.** **Although Mr. Bratic Could Not Say What Incremental Benefit Was Conferred By The '654 Patent, He Claims Damages of ███████ Through Q2 2020.**

Uniloc served Mr. Bratic's damages report on February 18, 2020. (Ex. 2, Bratic Rpt.). Mr. Bratic initially opined that a reasonable royalty on the accused Samsung mobile devices would be a running royalty of ███ per unit, which when applied to a royalty base of approximately ███ units of devices sold (based on actual and forecasted sales), results in approximately ███ in damages through Q2 2020. (Ex. 2, Bratic Rpt. at Ex. 6.) Mr. Bratic constructed a supposed hypothetical negotiation – a construct that is useful when there is no real-world evidence – based on the following methodology: He began with the average sales price of ███ per accused product. He multiplied the average sales price by Samsung Electronics America, Inc.'s ("SEA") average gross (not net) profit margin for the accused products to arrive at a gross profit

3

number of ███ He then used one Samsung survey – while excluding at least 18 other equally, if not more, applicable surveys – to conclude that ███ of the gross profits, or ███, is "[a]ttributable to [d]evice [s]ecurity." He then relied exclusively on Dr. Easttom's opaque "Apportionment Factor" of 50% to conclude that 50% of the "device security" on the accused products is attributable to the '654 patent, *i.e.*, ███. He concluded that Samsung and IPG Electronics 503 Ltd. ("IPG"), the hypothetical licensor in this case, would have agreed to split that "[e]conomic [v]alue" 50/50, at a per unit royalty rate of ███. (Ex. 2, Bratic Rpt. at Ex. 6.1.)

On March 24, 2020, the Court granted Uniloc's motion to compel the production of Samsung Electronics Co. Ltd.'s ("SEC") cost of goods sold ("COGS") for the accused products. (Dkt. 94.) On April 8, 2020, after receiving SEC's COGS, Mr. Bratic served a supplemental report. (Ex. 6, Bratic Supp. Rpt.) Mr. Bratic updated Samsung's profit margin from ███ to ███, by only subtracting COGS from revenues and disregarding SEA's and SEC's operating expenses. (*Id.* at Supp. Ex. 6.1; Ex. 4, Bratic Dep. at 93:15-22, 98:17-99:21, 107:15-108:14, 113:6-114:22; Ex. 7, Vigil Supp. Rpt. at ¶¶ 14-18.) Mr. Bratic arrived at an increased per unit royalty of ███. Even though Mr. Bratic had no idea what incremental benefit the patent conferred, he opined that damages should be ███ through Q2 2020. (Ex. 6, Supp. Bratic Rpt. at Supp. Ex. 6.)

**C.      Mr. Bratic Ignores A Mountain Of Real-World Evidence.**

The '654 patent issued on December 28, 2004 and was assigned to Koninklijke Philips Electronics N.V. ("Philips"). In June 2008, Philips sold the '654 patent, ███████ to IPG for ███████ (Ex. 5, Vigil Rpt., ¶ 22.) Pendragon Wireless LLC ("Pendragon"), a subsidiary of Pendrell Technologies LLC ("Pendrell"), then purchased the '654 patent, ███ in March 2012. (*Id.*) In November 2017, Uniloc Luxembourg S.A. purchased the '654 patent, ███████ from

4

Pendrell, for ████████ (*Id.*) In March 2018, Uniloc purchased Uniloc Luxembourg's entire patent

portfolio ████████████████████████████████████████████

██████████████████████████████████████████ (*Id.*) Mr. Bratic

claimed that none of these real-world purchase agreements involving the '654 patent was relevant

for purposes of determining the value of the patent. (Ex. 2, Bratic Rpt. at ¶¶ 52-108.)

On May 28, 2011, ██████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████ (Ex. 8 & 9.) On January 26, 2014, ████████████████

████████████████████████████████████ (Ex. 11.) Mr. Bratic

claimed that ██████████████████████████████████████████

██████ (Ex. 2, Bratic Rpt. at ¶¶ 52-108; Ex. 4, Bratic Dep. at 185:9-186:17, 188:10-191:14, 208:5-

209:8, 211:23-216:10.)

## III.    ARGUMENT

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical,

or other specialized knowledge will help the trier of fact to understand the evidence or to determine

a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product

of reliable principles and methods; and (d) the expert has reliably applied the principles and

methods to the facts of the case." Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509

U.S. 579, 592-93 (1993). The district court has a "gatekeeper" role under Rule 702 to ensure that

opinion testimony does not reach the jury when it "is irrelevant or does not result from the

application of reliable methodologies or theories to the facts of the case." *Micro Chem., Inc. v.

Lextron, Inc.*, 317 F.3d 1387, 1391 (Fed. Cir. 2003).

**A.**    **Mr. Bratic And Dr. Easttom Fail To Reliably Apportion Damages To Account For Only The Value Attributable To The '654 Patent.**

"[T]he trial court must carefully tie proof of damages to the claimed invention's footprint in the market place." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). "[W]here multi-component products are involved, the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). "That rule provides the basis for 'an important evidentiary principle' that requires expert testimony to apportion for the value added by a patent." *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, 2019 WL 2267212, *14 (E.D. Tex. April 17, 2019) (Gilstrap, J.).

Here, Mr. Bratic ████████████████████████████████████ provided by the '654 patent. (Ex. 4, Bratic Dep. at 64:6-79:18.) He relies exclusively on the following chart from Dr. Easttom for his 50% "Apportionment Factor." (*Id.* at 41:12-42:1; Ex. 12, Easttom Rpt. at ¶ 361; Ex. 2, Bratic Rpt. at ¶ 153.)



(Ex. 4, Bratic Dep. at 156:25-159:11 ████████████████████████████████)

*ACTIVE 50084829v3*

### 1.      Dr. Easttom's Chart Is Pulled From Thin Air.

"Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 137 (1997). Dr. Easttom's chart is not supported by any research, analysis, testing or peer-reviewed publication. (Ex. 12, Easttom Rpt. at ¶ 361.) The sole basis for the percentages in the chart is his ███████████████████████████████

████████████████████████████████████████████████ (Ex. 3, Easttom Dep. at 311:15-313:2, 324:9-326:12.) Dr. Easttom claimed █████████████

██████████████████████████████████████████████████

███████████████████████████████████ (*Id.* at 326:13-24.) This is precisely the type of fake expert opinion that courts regularly exclude. *See Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009) ("Where an expert's opinion is based on insufficient information, the analysis is unreliable."); *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) ("[T]he existence of sufficient facts and a reliable methodology is in all instances mandatory. Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible."); *Blue Spike v. Huawei Techs.*, 2016 WL 9286102, at *4 (E.D. Tex. Oct. 14, 2016) (expert "does not offer any 'credible economic analysis' to support his conclusion, making the 10% factor seemingly 'plucked out of thin air . . . .'"); *Stragent, LLC v. Intel Corp.*, 2014 WL 1389304, at *4 (E.D. Tex. March 6, 2014) (excluding expert opinion "not based on any theory that meets the *Daubert* criteria of verifiability, peer review or publication, an acceptable error rate, or general acceptance in the scientific community.").

In fact, Mr. Bratic's blind reliance on the perfunctory "apportionment" opinion of a technical expert was already soundly rejected in *Netfuel, Inc. v. Cisco Sys. Inc.*, 2020 WL 1274985, at *6-8 (N.D. Cal. March 17, 2020). Like Dr. Easttom, the technical expert in that case had pulled

so-called "apportionment" figures from thin air and claimed that the numbers were based on his knowledge and experience. *Id*. Mr. Bratic performed no apportionment of his own and had simply relied on the technical expert's made-up numbers to arrive at a royalty. *Id*. The court ruled:

> [A]n expert witness must follow some discernable methodology, and may not be a "a black box into which data is fed at one end and from which an answer emerges at the other." [Citation omitted.] In order for this Court to determine whether Dr. Rubin's conclusions are "reliable" and based on "sufficient facts or data," the Court must be able to follow his methodology. *See* Fed. R. Evid. 702. . . .

> After reviewing Dr. Rubin's reports, the Court agrees with Defendant—Dr. Rubin's conclusion that "security, reliability, and availability" represented 33% of the value of the Accused Operating Systems is an impermissible black box without "sound economic and factual predicates." [Citation omitted.]

*Id*. (citing *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002) and *GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247, at *4-5 (N.D. Cal. Apr. 16, 2014) (noting that "experience" does not constitute "sufficient facts or data" or "reliable principles and methods")). As in *Netfuel*, Dr. Easttom's chart, Mr. Bratic's reliance on the chart, and the so-called "Apportionment Factor" used by Mr. Bratic should all be excluded.

### 2. Mr. Bratic And Dr. Easttom Do Not Isolate And Separate The Value Of The Allegedly Infringing Features From The Value Of The Non-Infringing Features And Components.

Mr. Bratic concedes, as he must, that the accused Samsung products are multi-component devices that contain components and features that are not taught by the '654 patent. (Ex. 4, Bratic Dep. at 87:14-25.)[2] He understood Dr. Easttom's chart to indicate that the teachings of the '654 patent contribute to ███████████████████████████████

███████████████████████████████████████████████████████

---

[2] ███████████████████████████████████████████████ (Ex. 4, Bratic Dep. 88:1-6.) Thus, he should be precluded from testifying about total revenues or profits. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011); *BMC Software, Inc. v. ServiceNow, Inc.*, 2016 WL 379620, at *3 (E.D. Tex. Feb. 1, 2016) (Gilstrap, J.).

8

███████████████████████████████████████████ (Ex. 4, Bratic Dep. at

153:12-155:6.) Even though Dr. Easttom's chart attributed ████████████████████

█████████████████████ to the teachings of the '654 patent, ███████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████ (Ex. 3, Easttom Dep. at 317: 5-16.) He further admitted that the '654

patent ████████████████████████████████████████████████████████

██████████████████ (*Id*. at 43:8-21.) Neither Dr. Easttom nor Mr. Bratic performed any analysis to

████████████████████████████████████████████████████████████████

█████████████████████████████



(Ex. 4, Bratic Dep. 159:14-160:2.) Similarly, even though Dr. Easttom attributed █████████████

██████████████████████████████ to the teachings of the '654 patent, Mr. Bratic

understood that the technology to make emergency calls existed and was legally required before

the invention of the '654 patent. However, he performed ███████████████████████████

██████████████████████████ (*Id*. at 82:1-4, 160:11-162:3.) Mr. Bratic's

damages opinions should be excluded because he did not separate the value of the allegedly

infringing features from the value of the non-infringing features and components. *See BMC*

*Software*, 2016 WL 379620, at *3 (finding that expert "has failed to specify, distinguish, and then

separate the value of BMC's patented features from the unpatented features of ServiceNow's

9

products."); *Uniloc USA*, 2019 WL 2267212, at *14 (Gilstrap, J.) (granting *Daubert* motion because expert failed to apportion the "value specifically added by the [asserted] patent" when accused smartwatches were a "multi-component product"); *Intelligent Verification Sys., LLC. v. Microsoft Corp.*, 2015 WL 1518099, *7 (E.D. Va. Mar. 31, 2015) (Mr. Bratic "did not properly apportion any value to the necessary hardware components" when such components have "'several non-infringing features with no relation to the patented feature,' and yet Mr. Bratic attributed 100% of the [feature] to the apportioned royalty base").

**B.      Mr. Bratic's Use Of Samsung Surveys Is Arbitrary And Unreliable.**

     **1.      Mr. Bratic Assumes, With No Basis, That The Samsung Survey He Relies On Implicates The '654 Patent.**

In the one survey used by Mr. Bratic, ▮ of respondents said they wanted a phone that ▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 2, Bratic Rpt. at ¶ 149; Ex. 13; Ex. 4, Bratic Dep. at 115:20-117:6.) Mr. Bratic ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ He further ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ (Ex. 4, Bratic Dep., 128:25-131:17; Ex. 3, Easttom Dep. 9:1-6.) Because there is no evidence that this survey's reference to ▮▮▮▮▮▮▮ even implicates the technology of the '654 patent (as opposed to, *e.g.*, ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮, it was improper for Mr. Bratic to use the survey percentage as a starting point to "apportion" the value of the patent for any product, much less all 100+ accused products. *See Blue Spike*, 2016 WL 9286102, at *4 (excluding damages expert's testimony in part because the surveys he relied on "report that consumers value 'data security,' for instance, but this broad term

undoubtedly incorporates consumers' value for other non-patented security features on a smartphone, such as fingerprint sensors and mobile authentication.").

### 2. Mr. Bratic Improperly Equates The Percentage Of Responses To A Product Positioning Survey With The Percentage Of Revenue.

Mr. Bratic assumed, but performed zero analysis to show, that survey responses about how general product positioning statements, *i.e.*, information protection, "resonated" with survey participants equate to any contribution to Samsung's gross profits for the accused mobile devices. The Samsung survey used by Mr. Bratic merely studied product positioning statements – for example, ██████████████████████████████████████████ or ████████████████████████████████ ██████████████████████████████████████████ (Ex. 13.) The survey alone, without more, does not support the analytical leap from the percentage of consumer responses about *a concept* ████████████ to the percentage of a *specific feature*'s incremental contribution, if any, to profits. *Rembrandt Soc. Media, LP v. Facebook, Inc.*, 22 F. Supp. 3d 585, 596 (E.D. Va. 2013), is directly on point. There, the damages expert, like Mr. Bratic, simply "assume[d] – without explanation – that the weighted importance of any given feature is exactly equal to that same percentage of [Facebook's] advertising revenue." *Id*. Notably, here, the survey used by Mr. Bratic ████████ ████████████████████████ The survey expert in *Rembrandt* "admitted that his survey was just meant to determine the features that most drive Facebook's usage, and that 'the link between this [usage] data and the revenue question has to be the subject of a separate analysis.'" *Id*. The damages expert in *Rembrandt*, like Mr. Bratic, "did not perform that analysis, and did not explain why weighted importance of some feature to a user directly correlates to a certain percentage of Facebook's advertising revenue." *Id*. Accordingly, the court found the damages expert's methodology to be "suspect and unreliable" and excluded it. *Id*. Mr. Bratic's opinions

11

should be excluded for the same reason because he performed no analysis whatsoever to support

equating the ▮▮▮ survey response to ▮▮▮ of Samsung's gross profits. Moreover, even if this

correlation were permissible, there is no basis to apply the ▮▮▮ response taken from one 2014

survey to gross profits for more than 100 accused products sold over an eight-year period.

### 3.    Mr. Bratic Cherry Picks One Samsung Survey.

"[C]ourts have consistently excluded expert testimony that 'cherry-picks' relevant data."

*E.E.O.C. v. Freeman*, 778 F.3d 463, 469 (4th Cir. 2015) (collecting cases); *Konrick v. Exxon Mobil*

*Corp.*, 2016 WL 439361, at *13 (E.D. La. Feb. 4, 2016), aff'd, 670 Fed. App'x 222 (5th Cir. 2016).

Here, Mr. Bratic used one Samsung survey regarding ▮▮▮▮▮▮▮▮ while

disregarding at least 18 other surveys, ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ (Exs. 14-31.) He claimed that he

selected one Samsung survey because it ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ But he ▮▮▮

▮▮▮▮▮▮▮▮ (Ex. 4, Bratic Dep. at 131:18-132:13;

Exs. 28 & 29.) He admitted that in another case between Uniloc and Samsung (No. 2:18-cv-506),

he had ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ (Ex. 4, Bratic Dep. at 133:2-

134:13.) He also excluded surveys that studied ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ (*Id*. at 144:7-148:3.) Instead of attributing ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ he disregarded those surveys,

thereby skewing the percentage attributable to "device security" much higher. In short, Mr. Bratic

employed no discernible, consistent, non-biased methodology in selecting the Samsung marketing

surveys used. Depending on which surveys he selected, the percentage attributable to "device security" can change from ███ to ████ thereby reducing the damages under his model by ████████ ████████ dollars. (Ex. 5, Vigil Rpt. at ¶¶ 191-205; Ex. 7, Vigil Supp. Rpt. at Supp. Ex. 20.)

**C.  Mr. Bratic Improperly Relies On An ██████████████████████████ For His 50/50 Economic Benefit Split.**

Mr. Bratic relies on a ███████████████████████████████████ ████████████████████████████████████████████ for his proposed ████ split of the economic benefits from the '654 patent between Samsung and IPG. ███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

---

[3] Mr. Bratic opined that all of the other ██████████████████ produced in this case are ████ ████████████████████████████████████████████████████████ ████████████████████████████ (Ex. 6, Bratic Supp. Rpt. at ¶ 37.)

Second, ███████████████████████████████████████████

*Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 29-30 (Fed. Cir. 2012) ("We acknowledge that proposed licenses may have some value for determining a reasonable royalty in certain situations. Their evidentiary value is limited, however, by *inter alia*, the fact that patentees could artificially inflate the royalty rate by making outrageous offers."); *Wi-Lan Inc. v. LG Elecs., Inc.*, 2019 U.S. Dist. LEXIS 191152, at *19-21 (S.D. Cal. Nov. 1, 2019) (excluding proposals to license under Rule 403 where no one agreed to the proposals).

Third, the circumstances of ██████████████ are different from the hypothetical negotiation.



██████████ the hypothetical negotiation would have involved a non-exclusive license to only the '654 patent, ██████████████████ (Ex. 4, Bratic Dep. at 164:13-165:4, 165:25-166:4, 167:16-168:2, 169:10-170:23.) *Ziilabs Inc., Ltd. v. Samsung Elecs. Co. Ltd.*, 2015 WL 11110651, at *4 (E.D. Tex. Dec. 4, 2015) (excluding unconsummated non-analogous agreements).

**D.     Mr. Bratic Relies On Other Non-Comparable Agreements**

Uniloc had moved to compel the production of certain Samsung license agreements it learned about from internet searches. (Dkt. 68.) Samsung opposed the motion because those agreements involved non-comparable technology and Uniloc obviously was fishing for high

4 ██████████████████████████████████████████████████████
████████████████████████████████████████████
█████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████

14

*ACTIVE 50084829v3*



dollar value licenses. (Dkt. 72.) Before the hearing, Samsung produced the requested █████ ████████████████████ agreements with the pricing terms redacted and asked Uniloc to explain why the patents at issue were relevant. (Ex. 34.) Uniloc could not and agreed not to move for unredacted copies of the agreements. (Ho Decl. at ¶ 36; Dkt. 78.) Mr. Bratic █████████ ███████████████████████████████████████ comparable to the '654 patent.[5] (Ex. 6, Bratic Supp. Rpt. at ¶¶ 35-36; Ex. 4, Bratic Dep. at 21:21-24.) He nevertheless cites public sources to highlight the agreements' high dollar figures. (Ex. 6, Bratic Supp. Rpt. at ¶¶ 16, 18, 23, 28.) He also contends that ████████████████████████████████████ ██████████████████████████. (*Id*. at ¶ 38.) This backdoor attempt to introduce non-comparable agreements has been squarely rejected by this Court. *Realtime Data LLC v. EchoStar Corp.*, 2018 WL 6266300, at *4 (E.D. Tex. Nov. 15, 2018) (excluding damages expert's reliance on non-comparable licenses to show structure of the royalty rate); *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012) (when relying on past licenses, an expert must demonstrate more than a "loose or vague comparability between different technologies or licenses."); *Open Text S.A. v. Box, Inc*., 2015 WL 349197, at *5 (N.D. Cal. Jan. 23, 2015) (excluding testimony regarding non-comparable licenses, including for "background evidence").[6]

---

[5] ███████████████████████████████████████████████ ████████████████████████████████████ ██████████████████████████████████████████████ █████████████████████████

[6] Mr. Bratic also should be precluded from testifying that █████████████████████ █████████ because he provided no analysis, research or evidence to support this statement and a vague claim about "mobile device technology" is not admissible. (Ex. 2, Bratic Rpt. at ¶ 160.) *Laser Dynamics*, 694 F.3d at 79.

Dated: April 24, 2020

Respectfully submitted,

By:  */s/ Valerie W. Ho*
Valerie W. Ho
GREENBERG TRAURIG, LLP
1840 Century Park East
Los Angeles, CA 90067
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
Email: hov@gtlaw.com

Richard A. Edlin
Allan A. Kassenoff
Justin A. MacLean
GREENBERG TRAURIG, LLP
MetLife Building, 200 Park Avenue
New York, NY 10002
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: edlinr@gtlaw.com
Email: kassenoffa@gtlaw.com
Email: macleanj@gtlaw.com

Melissa R. Smith
Bar No. 24001351
GILLAM & SMITH LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

**Attorneys for Defendants Samsung**
**Electronics America, Inc. and**
**Samsung Electronics Co., Ltd.**

16

## CERTIFICATE OF CONFERENCE

On April 24, 2020, Allan Kassenoff, Valerie Ho, and Melissa Smith, counsel for Samsung, conferred with Aaron Jacobs, Brian Tollefson, and Kevin Gannon, counsel for Uniloc, as required by Local Rule 7(h). Counsel for Uniloc confirmed that Uniloc opposes this motion. Discussions conclusively ended at an impasse, leaving an open issue for the Court to resolve.

*/s/ Valerie W. Ho*
Valerie W. Ho

17

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 24th day of April 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document by electronic mail under Local Rule CV-5(d).

*/s/ Valerie W. Ho*
Valerie W. Ho

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule 5(a)(7)(A), the undersigned hereby certifies that the corresponding documents were filed under seal pursuant to the Court's Protective Order (Dkt. 23).

*/s/ Valerie W. Ho*
Valerie W. Ho